Thomas **KAVOURAS** and Lulu Kavouras, Plaintiffs,

v.

**VISUAL PRODUCTS SYSTEMS, INC., Gunther Slaton, Arthur Kaufman, and Rocky Mountain Securities and Investments, Inc., Defendants.**

**Civ. A. No. 87–2729.**

United States District Court, W.D. Pennsylvania.

March 8, 1988.

Stephen J. Laidhold, Lampl Sable Mako-roff & Libenson, Pittsburgh, Pa., for plaintiffs.

Harold M. Golz, Denver, Colo., for defendants.

## OPINION

GERALD J. WEBER, District Judge.

For sometime prior to the events in issue, plaintiffs had sought and accepted investment advice from Arthur Kaufman, a broker with Rocky Mountain Securities and Investments, Inc. In February 1987, Kaufman advised plaintiffs to subscribe to a new issuance of stock in Visual Products Systems, Inc. (VSP). Kaufman and Gunther Slaton, the principal at VSP, indicated to plaintiffs that the stock would soon be offered for public sale at twice the subscription price. Plaintiffs quickly invested $70,000 but soon became disillusioned. The stock was never issued and was never offered for public sale.

Plaintiffs sued Slaton and VPS in this action and obtained a default judgment when those two defendants failed to respond to the Complaint. Plaintiffs have also sued Kaufman and Rocky Mountain on a variety of securities law and fraud claims. These two defendants have filed a Motion for Stay, asserting that a prior agreement between the parties requires arbitration of this dispute. Plaintiffs oppose the motion and both sides have submitted briefs.

When plaintiffs first became clients of Rocky Mountain and Kaufman, they signed a Customer Account Agreement. Paragraph 13 of that agreement reads:

Agreement to Arbitrate Controversy

13. I agree that all controversies which may arise between us concerning any transaction or the construction, performance or breach of this or any other agreement between us, whether entered into prior, on or subsequent to the date hereof, shall be determined by arbitration in accordance with the rules of the National Association of Securities Dealers, Inc. It is understood that my agreement to arbitrate does not constitute a waiver of the right to seek a judicial forum where such a waiver would be void under the federal securities laws.

It is this provision which defendants invoke to compel arbitration.

■ Plaintiffs point out that a subsequent Account Agreement does not require arbitration but specifically reserves to the plaintiffs the right to litigate any dispute in the courts. However, Kaufman and Rocky Mountain are not party to this subsequent agreement. It was required when plaintiffs sought to open a margin account. Rocky Mountain employs Hanifen, Imhoff Inc. on all margin accounts and Hanifen, Imhoff requires a separate account agreement with the investors. Only plaintiffs and Hanifen, Imhoff are party to this second Account Agreement and so it cannot bind Rocky Mountain, nor can it supplant the original Account Agreement between plaintiffs and Rocky Mountain. It should also be noted that none of the events recited here involved Hanifen, Imhoff or the margin account. Indeed, no transaction was ever made on the margin account.

Plaintiffs also argue that the Account Agreement with Rocky Mountain is limited in application to transactions in which Rocky Mountain sold securities or other property for or on behalf of plaintiffs. Because plaintiffs bought the VPS stock directly from Slaton and VPS, without Rocky Mountain being a middleman on the transaction, plaintiffs argue that the Account Agreement does not apply.

■ This appears to be a distinction without a difference. The stock subscription was offered to plaintiffs by Kaufman. He advised them to invest and outlined the terms of the investment. He projected the expected return on the investment and introduced plaintiffs to Slaton. Even though the check and stock do not appear to have physically passed through Rocky Mountain accounts, Rocky Mountain was undeniably the middleman in the transaction. It is important to note that the arbitration clause of the Account Agreement is broad, requiring arbitration of "all controversies which arise between us concerning any transaction, or the construction, performance or breach of this or any other agreement between us." We conclude that the present case falls within the scope of this provision.

The arbitration provision being applicable, the question is what claims are arbitrable? The Complaint states 5 claims for relief:

Count I—Violation of Section 5 of the Securities Act of 1933.

Count II—Violation of Section 17 of the Securities Act of 1933.

Count III—Violation of Securities and Exchange Act of 1934 and Rule 10b-5.

Count IV—RICO violations.

Count V—Common law conspiracy to defraud.

There is no dispute that the claims asserted under the 1934 Act in Count III are subject to arbitration under the Account Agreement. *Shearson/American Express, Inc. v. McMahon,* — U.S. —, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987).

The controversy centers on Counts I and II, the claims under the 1933 Act. In *Wilko v. Swan,* 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953), the Court held that claims arising under the 1933 Act were not subject to arbitration under a pre-dispute agreement. This ruling was later extended to the 1934 Act which has very similar non-waiver provisions. E.g., *Ayres v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.,* 538 F.2d 532 (3d Cir.1976); *Jacobson v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.,* 797 F.2d 1197, (3d Cir.1986).

*McMahon* overruled those cases which held that 1934 Act claims were not arbitrable. While there were no 1933 Act claims involved in *McMahon,* the decision in that case cast considerable doubt on whether *Wilko* is still viable.

Our review of *McMahon* leaves us with the conviction that *Wilko* is now untenable. The non-waiver provisions of the two Acts are substantially the same and, given the opportunity which was not available in *McMahon,* the Court will apply the same rationale to the arbitrability of 1933 Act claims. In fact the Court in *McMahon* severely limited the holding in *Wilko* stating:

*Wilko* must be understood therefore as holding that the plaintiff's waiver of the "right to select the judicial forum", was unenforceable only because arbitration

was judged inadequate to enforce the statutory rights created by § 12(2). *McMahon,* 107 S.Ct. at 2338. Arbitration is no longer looked upon with such suspicion, and to the contrary is strongly encouraged. E.g. *Scherk v. Alberto-Culver Co.,* 417 U.S. 506, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974); *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985). Plaintiffs here have not alleged that arbitration would be inadequate or inequitable and in view of *McMahon's* discussion of *Wilko* nothing less will prevent arbitration.

■ We therefore conclude that Counts I and II, which state claims under the Securities Act of 1933, are subject to the pre-dispute arbitration agreement contained in the Account Agreement.

The RICO claims are likewise subject to arbitration. *McMahon,* 107 S.Ct. at 2343–2346. Finally the pendent state claim for common law conspiracy must be stayed pending arbitration of the other claims. *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985).

## CONCLUSION

Plaintiffs' claims in Counts I, II, III and IV are subject to arbitration under the terms of the Account Agreement between plaintiffs and Rocky Mountain, and are therefore stayed pending arbitration. The remaining pendent claim in Count V must be stayed pending arbitration of the other claims. Also, plaintiffs have obtained a default judgment against defendants Slaton and VSP. Therefore we will direct the Clerk to mark this matter closed, subject to reopening if necessary after the completion of arbitration proceedings.