# RODRIGUEZ DE QUIJAS ET AL. *v.* SHEARSON/ AMERICAN EXPRESS, INC.

No. 88–385.   Argued March 27, 1989—Decided May 15, 1989

KENNEDY, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and WHITE, O'CONNOR, and SCALIA, JJ., joined. STEVENS, J., filed a dissenting opinion, in which BRENNAN, MARSHALL, and BLACKMUN, JJ., joined, *post*, p. 486.

*Denis A. Downey* argued the cause and filed briefs for petitioners.

*Theodore A. Krebsbach* argued the cause for respondent. With him on the brief was *Jeffrey L. Friedman.*\*

JUSTICE KENNEDY delivered the opinion of the Court.

The question here is whether a predispute agreement to arbitrate claims under the Securities Act of 1933 is unenforceable, requiring resolution of the claims only in a judicial forum.

I

Petitioners are individuals who invested about $400,000 in securities. They signed a standard customer agreement with the broker, which included a clause stating that the parties agreed to settle any controversies "relating to [the] accounts" through binding arbitration that complies with specified procedures. The agreement to arbitrate these controversies is unqualified, unless it is found to be unenforceable under federal or state law. Customer's Agreement ¶ 13. The investments turned sour, and petitioners eventually sued respondent and its broker-agent in charge of the accounts, alleging that their money was lost in unauthorized and fraudulent transactions. In their complaint they

---

\*Paul Windels III* filed a brief for the Securities Industry Association et al. as *amici curiae* urging affirmance.

pleaded various violations of federal and state law, including claims under § 12(2) of the Securities Act of 1933, 15 U. S. C. § 77*l*(2), and claims under three sections of the Securities Exchange Act of 1934.

The District Court ordered all the claims to be submitted to arbitration except for those raised under § 12(2) of the Securities Act. It held that the latter claims must proceed in the court action under our clear holding on the point in *Wilko* v. *Swan*, 346 U. S. 427 (1953). The District Court reaffirmed its ruling upon reconsideration and also entered a default judgment against the broker, who is no longer in the case. The Court of Appeals reversed, concluding that the arbitration agreement is enforceable because this Court's subsequent decisions have reduced *Wilko* to "obsolescence." *Rodriguez de Quijas* v. *Shearson/Lehman Bros., Inc.*, 845 F. 2d 1296, 1299 (CA5 1988). We granted certiorari, 488 U. S. 954 (1988).

## II

The *Wilko* case, decided in 1953, required the Court to determine whether an agreement to arbitrate future controversies constitutes a binding stipulation "to waive compliance with any provision" of the Securities Act, which is nullified by § 14 of the Act. 15 U. S. C. § 77n. The Court considered the language, purposes, and legislative history of the Securities Act and concluded that the agreement to arbitrate was void under § 14.* But the decision was a difficult one in view of the competing legislative policy embodied in the Arbitration Act, which the Court described as "not easily reconcilable," and which strongly favors the enforcement of agreements to arbitrate as a means of securing "prompt, eco-

---

*The Court carefully limited its holding to apply only to arbitration agreements which are made "prior to the existence of a controversy." 346 U. S., at 438; see *id.*, at 438–439 (Jackson, J., concurring). In contrast, "courts uniformly have concluded that *Wilko* does not apply to the submission to arbitration of existing disputes." *Shearson/American Express Inc.* v. *McMahon*, 482 U. S. 220, 233 (1987).

nomical and adequate solution of controversies." 346 U. S., at 438.

It has been recognized that *Wilko* was not obviously correct, for "the language prohibiting waiver of 'compliance with any provision of this title' could easily have been read to relate to substantive provisions of the Act without including the remedy provisions." *Alberto-Culver Co.* v. *Scherk*, 484 F. 2d 611, 618, n. 7 (CA7 1973) (Stevens, J., dissenting), rev'd, 417 U. S. 506 (1974). The Court did not read the language this way in *Wilko*, however, and gave two reasons. First, the Court rejected the argument that "arbitration is merely a form of trial to be used in lieu of a trial at law." 346 U. S., at 433. The Court found instead that § 14 does not permit waiver of "the right to select the judicial forum" in favor of arbitration, *id.*, at 435, because "arbitration lacks the certainty of a suit at law under the Act to enforce [the buyer's] rights," *id.*, at 432. Second, the Court concluded that the Securities Act was intended to protect buyers of securities, who often do not deal at arm's length and on equal terms with sellers, by offering them "a wider choice of courts and venue" than is enjoyed by participants in other business transactions, making "the right to select the judicial forum" a particularly valuable feature of the Securities Act. *Id.*, at 435.

We do not think these reasons justify an interpretation of § 14 that prohibits agreements to arbitrate future disputes relating to the purchase of securities. The Court's characterization of the arbitration process in *Wilko* is pervaded by what Judge Jerome Frank called "the old judicial hostility to arbitration." *Kulukundis Shipping Co.* v. *Amtorg Trading Corp.*, 126 F. 2d 978, 985 (CA2 1942). That view has been steadily eroded over the years, beginning in the lower courts. See *Scherk*, *supra*, at 616 (Stevens, J., dissenting) (citing cases). The erosion intensified in our most recent decisions upholding agreements to arbitrate federal claims raised under the Securities Exchange Act of 1934, see *Shear-*

*son/American Express Inc.* v. *McMahon*, 482 U. S. 220 (1987), under the Racketeer Influenced and Corrupt Organizations (RICO) statutes, see *ibid.*, and under the antitrust laws, see *Mitsubishi Motors Corp.* v. *Soler Chrysler-Plymouth, Inc.*, 473 U. S. 614 (1985). See also *Dean Witter Reynolds Inc.* v. *Byrd*, 470 U. S. 213, 221 (1985) (federal arbitration statute "requires that we rigorously enforce agreements to arbitrate"); *Moses H. Cone Memorial Hospital* v. *Mercury Construction Corp.*, 460 U. S. 1, 24 (1983) ("[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration"). The shift in the Court's views on arbitration away from those adopted in *Wilko* is shown by the flat statement in *Mitsubishi:* "By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." 473 U. S., at 628. To the extent that *Wilko* rested on suspicion of arbitration as a method of weakening the protections afforded in the substantive law to would-be complainants, it has fallen far out of step with our current strong endorsement of the federal statutes favoring this method of resolving disputes.

Once the outmoded presumption of disfavoring arbitration proceedings is set to one side, it becomes clear that the right to select the judicial forum and the wider choice of courts are not such essential features of the Securities Act that § 14 is properly construed to bar any waiver of these provisions. Nor are they so critical that they cannot be waived under the rationale that the Securities Act was intended to place buyers of securities on an equal footing with sellers. *Wilko* identified two different kinds of provisions in the Securities Act that would advance this objective. Some are substantive, such as the provision placing on the seller the burden of proving lack of scienter when a buyer alleges fraud. See 346 U. S., at 431, citing 15 U. S. C. § 77*l*(2). Others are procedural. The specific procedural improvements highlighted in

*Wilko* are the statute's broad venue provisions in the federal courts; the existence of nationwide service of process in the federal courts; the extinction of the amount-in-controversy requirement that had applied to fraud suits when they were brought in federal courts under diversity jurisdiction rather than as a federal cause of action; and the grant of concurrent jurisdiction in the state and federal courts without possibility of removal. See 346 U. S., at 431, citing 15 U. S. C. § 77v(a).

There is no sound basis for construing the prohibition in § 14 on waiving "compliance with any provision" of the Securities Act to apply to these procedural provisions. Although the first three measures do facilitate suits by buyers of securities, the grant of concurrent jurisdiction constitutes explicit authorization for complainants to waive those protections by filing suit in state court without possibility of removal to federal court. These measures, moreover, are present in other federal statutes which have not been interpreted to prohibit enforcement of predispute agreements to arbitrate. See *Shearson/American Express Inc. v. McMahon, supra* (construing the Securities Exchange Act of 1934; see 15 U. S. C. § 78aa); *ibid.* (construing the RICO statutes; see 18 U. S. C. § 1965); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., supra* (construing the antitrust laws; see 15 U. S. C. § 15).

Indeed, in *McMahon* the Court declined to read § 29(a) of the Securities Exchange Act of 1934, the language of which is in every respect the same as that in § 14 of the 1933 Act, compare 15 U. S. C. § 77v(a) with § 78aa, to prohibit enforcement of predispute agreements to arbitrate. The only conceivable distinction in this regard between the Securities Act and the Securities Exchange Act is that the former statute allows concurrent federal-state jurisdiction over causes of action and the latter statute provides for exclusive federal jurisdiction. But even if this distinction were thought to make any difference at all, it would suggest that arbitration agreements,

which are "in effect, a specialized kind of forum-selection clause," *Scherk* v. *Alberto-Culver Co.*, 417 U. S. 506, 519 (1974), should not be prohibited under the Securities Act, since they, like the provision for concurrent jurisdiction, serve to advance the objective of allowing buyers of securities a broader right to select the forum for resolving disputes, whether it be judicial or otherwise. And in *McMahon* we explained at length why we rejected the *Wilko* Court's aversion to arbitration as a forum for resolving disputes over securities transactions, especially in light of the relatively recent expansion of the Securities and Exchange Commission's authority to oversee and to regulate those arbitration procedures. 482 U. S., at 231–234. We need not repeat those arguments here.

Finally, in *McMahon* we stressed the strong language of the Arbitration Act, which declares as a matter of federal law that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U. S. C. § 2. Under that statute, the party opposing arbitration carries the burden of showing that Congress intended in a separate statute to preclude a waiver of judicial remedies, or that such a waiver of judicial remedies inherently conflicts with the underlying purposes of that other statute. 482 U. S., at 226–227. But as Justice Frankfurter said in dissent in *Wilko*, so it is true in this case: "There is nothing in the record before us, nor in the facts of which we can take judicial notice, to indicate that the arbitral system . . . would not afford the plaintiff the rights to which he is entitled." 346 U. S., at 439. Petitioners have not carried their burden of showing that arbitration agreements are not enforceable under the Securities Act.

The language quoted above from § 2 of the Arbitration Act also allows the courts to give relief where the party opposing arbitration presents "well-supported claims that the agreement to arbitrate resulted from the sort of fraud or over-

whelming economic power that would provide grounds 'for the revocation of any contract.'" *Mitsubishi*, 473 U. S., at 627. This avenue of relief is in harmony with the Securities Act's concern to protect buyers of securities by removing "the disadvantages under which buyers labor" in their dealings with sellers. *Wilko, supra*, at 435. Although petitioners suggest that the agreement to arbitrate here was adhesive in nature, the record contains no factual showing sufficient to support that suggestion.

## III

We do not suggest that the Court of Appeals on its own authority should have taken the step of renouncing *Wilko*. If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions. We now conclude that *Wilko* was incorrectly decided and is inconsistent with the prevailing uniform construction of other federal statutes governing arbitration agreements in the setting of business transactions. Although we are normally and properly reluctant to overturn our decisions construing statutes, we have done so to achieve a uniform interpretation of similar statutory language, *Commissioner* v. *Estate of Church*, 335 U. S. 632, 649–650 (1949), and to correct a seriously erroneous interpretation of statutory language that would undermine congressional policy as expressed in other legislation, see, *e. g., Boys Markets, Inc.* v. *Retail Clerks*, 398 U. S. 235, 240–241 (1970) (overruling *Sinclair Refining Co.* v. *Atkinson*, 370 U. S. 195 (1962)). Both purposes would be served here by overruling the *Wilko* decision.

It also would be undesirable for the decisions in *Wilko* and *McMahon* to continue to exist side by side. Their inconsistency is at odds with the principle that the 1933 and 1934 Acts should be construed harmoniously because they "consti-

tute interrelated components of the federal regulatory scheme governing transactions in securities." *Ernst & Ernst* v. *Hochfelder*, 425 U. S. 185, 206 (1976). In this case, for example, petitioners' claims under the 1934 Act were subjected to arbitration, while their claim under the 1933 Act was not permitted to go to arbitration, but was required to proceed in court. That result makes little sense for similar claims, based on similar facts, which are supposed to arise within a single federal regulatory scheme. In addition, the inconsistency between *Wilko* and *McMahon* undermines the essential rationale for a harmonious construction of the two statutes, which is to discourage litigants from manipulating their allegations merely to cast their claims under one of the securities laws rather than another. For all of these reasons, therefore, we overrule the decision in *Wilko*.

Petitioners argue finally that if the Court overrules *Wilko*, it should not apply its ruling retroactively to the facts of this case. We disagree. The general rule of long standing is that the law announced in the Court's decision controls the case at bar. See, *e. g.*, *Saint Francis College* v. *Al-Khazraji*, 481 U. S. 604, 608 (1987); *United States* v. *Schooner Peggy*, 1 Cranch 103, 109 (1801). In some civil cases, the Court has restricted its rulings to have prospective application only, where specific circumstances are present. *Chevron Oil* v. *Huson*, 404 U. S. 97, 106–107 (1971). Under the *Chevron* approach, the customary rule of retroactive application is appropriate here. Although our decision to overrule *Wilko* establishes a new principle of law for arbitration agreements under the Securities Act, this ruling furthers the purposes and effect of the Arbitration Act without undermining those of the Securities Act. Today's ruling, moreover, does not produce "substantial inequitable results," 404 U. S., at 107, for petitioners do not make any serious allegation that they agreed to arbitrate future disputes relating to their investment contracts in reliance on *Wilko*'s holding that such agreements would be held unenforceable by the courts. Our

conclusion is reinforced by our assessment that resort to the arbitration process does not inherently undermine any of the substantive rights afforded to petitioners under the Securities Act.

The judgment of the Court of Appeals is

*Affirmed.*

JUSTICE STEVENS, with whom JUSTICE BRENNAN, JUSTICE MARSHALL, and JUSTICE BLACKMUN join, dissenting.

The Court of Appeals refused to follow *Wilko* v. *Swan*, 346 U. S. 427 (1953), a controlling precedent of this Court. As the majority correctly acknowledges, *ante*, at 484, the Court of Appeals therefore engaged in an indefensible brand of judicial activism.[1] We, of course, are not subject to the same restraint when asked to upset one of our own precedents. But when our earlier opinion gives a statutory provision concrete meaning, which Congress elects not to amend during the ensuing 3½ decades, our duty to respect Congress' work product is strikingly similar to the duty of other federal courts to respect our work product.[2]

---

[1] After the Court decided *Shearson/American Express Inc.* v. *McMahon*, 482 U. S. 220 (1987), numerous District Courts also deviated from the rule established in *Wilko* v. *Swan*, and enforced predispute arbitration clauses in suits brought pursuant to the Securities Act of 1933. *E. g.*, *Reed* v. *Bear, Stearns & Co.*, 698 F. Supp. 835 (Kan. 1988); *Ryan* v. *Liss, Tenner & Goldberg Securities Corp.*, 683 F. Supp. 480 (NJ 1988); *Kavouras* v. *Visual Products Systems, Inc.*, 680 F. Supp. 205 (WD Pa. 1988); *Aronson* v. *Dean Witter Reynolds, Inc.*, 675 F. Supp. 1324 (SD Fla. 1987); *DeKuyper* v. *A. G. Edwards & Sons, Inc.*, 695 F. Supp. 1367 (Conn. 1987); *Rosenblum* v. *Drexel Burnham Lambert Inc.*, 700 F. Supp. 874 (ED La. 1987); *Staiman* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 673 F. Supp. 1009 (CD Cal. 1987).

[2] Cf. *McMahon*, 482 U. S., at 268 (STEVENS, J., concurring in part and dissenting in part) ("[A]fter a statute has been construed . . . by this Court . . . it acquires a meaning that should be as clear as if the judicial gloss had been drafted by the Congress itself. This position reflects both respect for Congress' role, see *Boys Market, Inc.* v. *Retail Clerks*, 398 U. S. 235, 257–258 (1970) (Black, J., dissenting), and the compelling need to preserve

In the final analysis, a Justice's vote in a case like this depends more on his or her views about the respective law-making responsibilities of Congress and this Court than on conflicting policy interests. Judges who have confidence in their own ability to fashion public policy are less hesitant to change the law than those of us who are inclined to give wide latitude to the views of the voters' representatives on non-constitutional matters. Cf. *Boyle* v. *United Technologies Corp.*, 487 U. S. 500 (1988). As I pointed out years ago, *Alberto-Culver Co.* v. *Scherk*, 484 F. 2d 611, 615–620 (CA7 1973) (dissenting opinion), rev'd, 417 U. S. 506 (1974), there are valid policy and textual arguments on both sides regarding the interrelation of federal securities and arbitration Acts.[3] See *ante*, at 479–484. None of these arguments, however, carries sufficient weight to tip the balance between judicial and legislative authority and overturn an interpretation of an Act of Congress that has been settled for many years.

I respectfully dissent.

---

the courts' limited resources, see B. Cardozo, The Nature of the Judicial Process 149 (1921)").

[3] Indeed the Court first debated some of these arguments in the precedent-setting opinion that the majority now overrules. Compare *Wilko*, 346 U. S., at 432–438, with *id.*, at 439–440 (Frankfurter, J., dissenting). Most recently they were revisited in *McMahon*, *supra*, an action based upon the Securities Exchange Act of 1934. Compare 482 U. S., at 225–238, with *id.*, at 243–266 (BLACKMUN, J., concurring in part and dissenting in part).