DeMOSS, Circuit Judge,
dissenting in part.
I am unable to concur with the summary disposition which the majority makes as to Kuban’s challenge to the constitutionality of § 922(g)(1) as applied to him, and write to respectfully register my reasons for this partial dissent.
First, I do not regard the opinion in Scarborough v. United States, 431 U.S. 563, 97 S.Ct. 1963, 52 L.Ed.2d 582 (1977), as “barring the way” as the majority notes in footnote 4 above. In Scarborough the Supreme Court interpreted the language of 18 U.S.CApp. § 1202(a)(1) which fixed the punishments for a convicted felon “who receives, possesses or transports in commerce or affecting commerce ... any firearm.” The writ of certiorari in Scarborough was limited to the question of whether a conviction under 18 U.S.C.App. § 1202(a) “is sustainable merely upon a showing that the possessed firearm has previously at any time however remote traveled in interstate commerce.” Concluding that the legislative history of § 1202(a) gave no indication “that Congress intended to require any more than the minimal nexus that the firearm has been, at some time, in interstate commerce,” the Supreme Court affirmed the conviction, but without any real analysis of whether the “minimal nexus” was constitutionally sufficient.
In 1986, § 1202(a), along with the various congressional findings which the Court cited in Scarborough as supporting the “minimal nexus” conclusion, was repealed by Congress.[1] The present statute under which Kuban was indicted reads in relevant portions as follows:
(g) It shall be unlawful for any person— (1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;
to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.
18 U.S.C. § 922(g).
*977 Applying a common sense reading to § 922(g) and reading the words and punctuation in the manner which an average citizen would read it, this subsection creates three separate and distinct criminal acts as follows:
A. Element A: It shall be unlawful for [a convicted felon] to ship or transport in interstate or foreign commerce any firearm or ammunition;
B. Element B: It shall be unlawful for [a convicted felon] to possess in or affecting commerce any firearm or ammunition; or
C. Element C: It shall be unlawful for [a convicted felon] to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.
It seems critically important that we note the clear differences between the current statute (§ 922(g)(1)) under which Kuban was indicted and the old statute (18 U.S.C.App. § 1202(a)(1)) which was construed in Scarborough. First, as the Supreme Court has held, under the old statute the phrase “in commerce or affecting commerce” applied to each of the three verbs: “receives, possesses or transports.”[2] Under the current statute, however, the phrase “in or affecting commerce” modifies only the verb “possess” in Element B of the current statute. Next, it is apparent that the current statute is structurally different from the statute construed in Scarborough because the phrase “which has been shipped or transported in interstate or foreign commerce” modifies only the “firearm or ammunition” which was “received” by a convicted felon in Element C.
It seems important to note that the current statute (§ 922(g)(1)) does not use any words or phrases which refer to or are a derivative of the phrase used in the question certified on writ of certiorari in Scarborough: “that the possessed firearm has previously at any time however remote traveled in interstate commerce.” (Emphasis added.) Nor are there any words or phrases in the current statute referring to the holding of the Supreme Court in Scarborough that the “firearm had been, at some time, in interstate commerce”. In putting together § 922(g), Congress could easily have inserted the phrase “at any time” after the words “shipped or transported” in Element C as it did in § 922(k), and the absence of any phrase as to the remoteness in time of the shipment or transportation in interstate commerce leads me to the conclusion that Congress chose not to rely upon the “minimal nexus” of Scarborough, but rather crafted § 922(g) to have clear and unambiguous connections with interstate commerce.
The second reasons why I would not consider that Scarborough stands in the way of a thorough examination of the constitutionality of § 922(g)(1) in this case is that the precise holding in Scarborough is in fundamental and irreconcilable conflict with the rationale of the United States Supreme Court in United States v. Lopez, — U.S. -, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995).[3] Obviously the precise holding in Lopez which declared § 922(q) unconstitutional does not automatically determine the issue as to § 922(g)(1). But Lopez has to be read as more than a case determining the constitutionality of one of the subsections of § 922. Rather, Lopez is a fundamental and landmark restatement and redefinition of the powers of Congress under the Commerce Clause. Whatever may have been the ambiguities and lack of clarity under prior case law as to whether an activity must “affect” or “substantially affect” interstate commerce in order to be within Congress’ power to regulate it under the Commerce Clause, the Court stated in Lopez that “consistent with the great weight of our case *978 law ... the proper test requires an analysis of whether the regulated activities substantially affects interstate commerce.” Id. at -, 115 S.Ct. at 1630. In my view, this conclusion means that in regard to Element B of § 922(g)(1) the possession by a convicted felon of a firearm must now “substantially affect interstate commerce.” Consequently, the “minimal nexus” of Scarborough can no longer be deemed sufficient under the Lopez requirement of substantially affecting interstate commerce. The mere fact that a felon possesses a firearm which was transported in interstate commerce years before the current possession cannot rationally be determined to have a “substantial impact on interstate commerce” as of the time of current possession.
Finally, I would proceed to reach the constitutionality of § 922(g)(1) in this case because the facts are so compellingly local in nature. The events which ultimately resulted in this federal indictment started out as a quarrel between a father (Kuban) and his 14-year-old daughter which deteriorated into a “family disturbance” (so characterized in the factual stipulation filed by the United States Attorney and the Presentence Report prepared by the Probation Department). The events took place in the .residential areas of a small town in Travis County, Texas. When the witnesses and victims felt the need of police assistance, they called the sheriff of Travis County and the police department of the local town. They did not call the FBI, the DEA, the ATF or any other federal law enforcement agency. Ultimately, the local police officers found and arrested Kuban and took him into state custody on various state criminal charges, including the state charge of being a felon in possession of a gun. All of these events took place on July 1, 1994. Four months later, the United States Bureau of Alcohol, Tobacco and Firearms initiated a federal investigation regarding the weapons and Kuban was named as a defendant in a one-count federal indictment charging him with being a felon in possession of a firearm. At the time of the issuance of this federal indictment, Kuban was still in state custody and the United States Attorney issued an application for writ of habeas corpus ad pro-sequendum in order to bring Kuban from custody in the Travis County jail to arraignment on the federal charges.
The federal indictment charges that Ku-ban, “a person who had previously been convicted of a crime punishable by imprisonment for a term exceeding one year, did knowingly possess a firearm that had been shipped and transported in interstate commerce and affecting commerce, specifically a Browning 9 mm pistol and a Ruger Red Hawk .41 Magnum caliber revolver, in violation of Title 18, United States Code, § 922(g)(1).” The language of the indictment is a hodgepodge eut- and-paste mixing of the elements of criminal conduct under § 922(g)(1). The prohibited verb “possess” is out of Element B; the phrase “that had been shipped and transported in interstate commerce” is out of Element C, but the word “had” is substituted for the word “has”, a not insignificant change of the tenses of the verb. The phrase “and affecting commerce” is out of Element B and as placed in the indictment language it is impossible to determine whether this phrase modifies “possess” or “shipped and transported.” The indictment uses only the prohibited verb “possess” and does not mention “receives.” The indictment does not contain any allegation about the conduct “substantially ” affecting commerce.
In the factual basis filed by the United States Attorney the only grounds upon which the government offered to prove that the conduct involved had anything to do with interstate commerce was the tender of proof that the firearms involved “had previously traveled in interstate commerce as the Browning 9 mm semi-automatic pistol was manufactured in Belgium and the Ruger Red Hawk .41 Magnum revolver was manufactured in Connecticut.” The fact that a firearm was manufactured originally in Belgium or Connecticut and is later found in possession of a felon in Texas cannot constitute proof beyond a reasonable doubt that such firearm was ever “shipped or transported in interstate commerce,” for it is just as plausible that the firearm was purchased by its original owner where it was manufactured and brought or carried to Texas by such original owner as part of his personal property and not as part of any interstate shipment. The government’s theory might hold water if the statute prohibited a felon from possess *979 ing a firearm in any state different from the state where the firearm was manufactured; but that’s not what § 922(g)(1) prohibits. Furthermore, there was no offer of any proof by the government that Kuban’s possession of the firearm took place in a channel of commerce or that it involved any facility of interstate commerce. Likewise, there was no offer of proof of any kind by the government that Kuban’s possession of the weapons on July 1, 1994, had any effect whatsoever, much less a substantial effect, on interstate commerce.
If the government is correct that all it takes to get a conviction under § 922(g)(1) is to show that a felon possessed a firearm which at some time in past history was shipped in interstate commerce, then all of the other elements of § 922(g)(1) are rendered surplusage and meaningless. Lopez reiterates the warning issued earlier by the Supreme Court in Jones & Laughlin Steel:
[ T]he scope of [the interstate commerce] power must be considered in the light of our dual system of government and may not be extended so as to embrace effects upon interstate commerce so indirect and remote that to embrace them, in view of our complex society, would effectually obliterate the distinction between what is national and what is local and create a completely centralized government.
NLRB v. Jones & Laughlin Steel Corp., 301 U.S. 1, 37, 57 S.Ct. 615, 624, 81 L.Ed. 893 (1937). I would hold that the “affecting commerce” mantra of Scarborough has been changed by Lopez’s requirement of a substantial affect on commerce and Scarborough ’s “minimal nexus” can no longer satisfy Lopez’s requirement that the regulated activity must exert a substantial economic effect on interstate commerce.
For these reasons I would address the constitutional issue and hold that under the facts of this case there is no substantial effect on interstate commerce to satisfy the indictment under § 922(g)(1).

. Firearms Owners' Protection Act of 1986, Public Law 99-308; H.R.Rep No. 495, 99th Cong. 2d Sess., § 4 (1986) ("Title VII of the Omnibus Crime Control and Safe Streets Act of 1968 [which enacted § 1202(a) ] is repealed.”).

. United States v. Bass, 404 U.S. 336, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971).

. I, of course, am mindful of the Supreme Court’s warning in Rodriguez Quijos v. Shearson/American Express, Inc., 490 U.S. 477, 484, 109 S.Ct. 1917, 1921-22, 104 L.Ed.2d 526 (1989), that "[i]f a precedent of [the Supreme] Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to [the Supreme] Court the prerogative of overruling its own decisions.” I, however, do not believe that Scarborough directly controls because (1) the statute at issue in Scarborough has been repealed and (2) the Scarborough court did not address the constitutional issue. Thus, Shear-son/American Express does not apply.