# IN THE COURT OF APPEALS OF IOWA

No. 14-1670
Filed June 15, 2016

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**JARROD DALE MAJORS,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Taylor County, David L. Christensen, Judge.

        Jarrod Majors appeals from the sentence imposed on resentencing. **AFFIRMED.**

        Mark C. Smith, State Appellate Defender, and Bradley M. Bender, Assistant Appellate Defender, for appellant.

        Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee.

        Considered by Danilson, C.J., and Mullins and McDonald, JJ.

**DANILSON, Chief Judge.**

Jarrod Majors appeals from the sentence imposed following an individualized resentencing hearing. We find no abuse of discretion and affirm.

**I. Background Facts and Proceedings.**

In July 2002, as a result of a home invasion, Majors was charged with eleven counts: two counts of attempted murder, one count of first-degree burglary while in possession of a firearm, three counts of assault while participating in first-degree burglary while in possession of a firearm in a weapons-free zone, three counts of going armed with intent, and two counts of criminal trespass. He was seventeen years old at the time of the offenses. In November 2002, he entered a plea of guilty to one count of attempted murder and agreed not to appeal. In exchange, the State agreed to dismiss the remaining ten counts. However, Majors appealed, and the State proceeded with the remaining ten counts.

On May 13, 2003, Majors agreed to plead guilty to a lesser-included offense of second-degree burglary, to dismiss the appeal of his sentence for his conviction of attempted murder, and to agree the sentence for burglary would be served consecutive to his sentence for attempted murder. The State agreed to dismiss the remaining nine counts. Majors waived time for sentencing and requested immediate sentencing. The district court sentenced Majors to an indeterminate term in prison not to exceed ten years on the second-degree burglary conviction, which was to run consecutively to the twenty-five-year, attempted-murder sentence.

On May 9, 2014, after having filed several additional motions and two applications for postconviction relief,[1] Majors filed a motion to correct an illegal sentence. He asserted that because he was a juvenile at the time of the commission of the offenses, the imposition of an automatic mandatory minimum sentence was illegal. A resentencing hearing was held. The parties stipulated that based on the recent rulings of the Iowa Supreme Court, Majors' motion should be granted to the extent that the prior automatic imposition of the sentencing provision under Iowa Code section 902.12 (2001) constitutes an illegal sentence. As a result, the parties agreed that Majors was entitled to an individualized resentencing hearing.

The district court than heard and received evidence from the parties, a victim-impact statement from one of the victims, and the parties' recommendations as to what sentences should be imposed. The court took Majors' resentencing under advisement and considered whether the mandatory-minimum sentence pursuant to section 902.12 is subject to his resentencing or if such a mandatory sentence is unconstitutional under the cruel and unusual punishment clause of the Iowa Constitution, article 1, section 17.

On September 26, 2014, the district court issued a lengthy and comprehensive ruling. We quote some of the court's conclusions. The district court noted the Iowa Supreme Court's recent decisions, the factors to consider in juvenile sentencing, and that a lengthy term of incarceration without the

---

[1] *See Majors v. State*, No. 12-1090, 2013 WL 2637599, at *2 (Iowa Ct. App. June 12, 2013).

possibility of parole is to be the exception. The court then considered the factors in Majors' case:

> At the time of the commission of these offenses, the defendant was only fifteen days from his eighteenth birthday. In the appellate opinions finding mandatory minimum sentences unconstitutional when applied to juvenile offenders, the Iowa Supreme Court emphasizes that juveniles' immaturity reduces their culpability because they are subject to impulsive behavior and peer pressure, and they have not adequately developed the ability to comprehend the full nature and consequences of their actions. Given this stance, logic would dictate that as juveniles get older the juveniles become more mature, become less subject to impulsive behavior and peer pressure, and they are better able to comprehend the full nature and consequences of their actions. Therefore, juveniles who have almost reached the age of [eighteen] would be substantially mature, minimally subject to impulsive behavior and peer pressure, and largely able to comprehend the full nature and consequences of their actions. If this logic is applied to the facts of this case, the defendant was only fifteen days from reaching the age of eighteen, the age at which a person becomes fully accountable for the person's criminal acts.
>
> In assessing whether the defendant's actions were the result of youth or a criminal nature, because this is a resentencing hearing instead of an original sentencing hearing, the court has the benefit of knowing the defendant's behavior during his eleven years of incarceration. The report provided by his counselor lists fifty-five prison rule violations spread out relatively evenly over the length of his period of incarceration. Instead of depicting a person who has decreased his impulsivity and gained maturity and understanding of consequences, the defendant's behavioral record in prison paints a picture of a person who does not recognize societal rules, now or eleven years ago. This record is indicative of a person who had developed his adult behaviors and attitudes by the time he committed his crimes. While juveniles are more capable of change than adults, the defendant's actions over the past eleven years have shown that he is the exceptional juvenile who formed his long-term attitudes and behaviors before reaching the age of majority, and those negative attitudes and behaviors persist to this date.

The court also took an in-depth examination of the facts of the crimes committed:

> [T]he defendant thoroughly planned these crimes, demonstrated the patience to wait for the right opportunity and took measures to avoid detection, identification, and apprehension. Jamie Peckham told how his family attended an activity every Wednesday evening,

and afterward he would drop his wife off at their house and then drive their two children around for a while so they would fall asleep. The defendant lived across the street from his victims, and it was not a coincidence that the defendant entered their home and concealed himself in the upstairs bedroom on the same night of the week that he had observed this routine taking place. The defendant had the foresight to bring duct tape to bind Holly Peckham. He wore a mask to conceal his face and gloves to ensure that he left no fingerprints. The defendant devised a home-made silencer by taping a plastic bottle over the end of the barrel of a rifle. He took measures to avoid apprehension, arming himself with a loaded rifle, which had a chambered round, and a machete. These facts indicate that the defendant did not act impulsively or as the result of any peer pressure, but instead acted carefully and deliberately, planning the timing and method of his crimes very carefully. These facts also indicate that the defendant fully understood the nature and potential consequences of his acts. He sought to avoid those consequences by concealing his identity and trying to ensure he would escape apprehension by arming himself with two separate weapons.

Ultimately, the court concluded:

All of these facts demonstrate that the defendant did not act under an impulse or peer pressure, and that he had fully considered the nature, risks, and potential consequences of his actions. The defendant cannot use his juvenile status at the time he committed these crimes to shield him from full responsibility for those crimes. "At the same time, it bears emphasis that while youth is a mitigating factor in sentencing, it is not an excuse." [*State v.*] *Null*, 836 N.W.2d [41,] 75 [(Iowa 2013)].

After comprehensive consideration of all of the relevant factors, for the reasons set forth above, it is the conclusion of the court that the defendant is the exceptional case in which sentences providing for the maximum period of incarceration, including a mandatory minimum sentencing provision, are appropriate.

The court then entered judgment. On his conviction for burglary in the second degree, the court ordered Majors to be sentenced to an indeterminate term of imprisonment not to exceed ten years and pay a fine of $1000, as well as the statutory surcharges and court costs. The court suspended the imposition of the fine and surcharge. On his conviction of attempted murder, the court ordered

Majors to be sentenced to an indeterminate term of imprisonment not to exceed twenty-five years, ruling Majors must serve at least seventy percent of the maximum term of the sentence before he is eligible for parole. The court also ordered that the sentences were to be served consecutively, for a total term of incarceration not to exceed thirty-five years.

Majors appeals, contending the district court abused its discretion in resentencing him.

## II. Scope and Standard of Review.

Where the claim raised by an appellant is that the district court failed to consider any of the required factors or considered any of the required mitigating factors to be aggravating, then the sentence imposed has been the product of a defective sentencing proceeding, which is unconstitutional. *See State v. Lyle*, 854 N.W.2d 378, 402-04 (Iowa 2014); *see also State v. Seats*, 865 N.W.2d 545, 553 (Iowa 2015) (stating "we have begun to decide cases involving constitutional attacks on the validity of a sentence" and "[w]hen a defendant attacks the constitutionality of a sentence, our review is de novo").

However, where the appellant attacks the legality of the sentence on nonconstitutional grounds, our review is for errors at law. *Seats*, 865 N.W.2d at 553. If the claim is that the district court has granted an individualized hearing, imposed a sentence within the statutory limits, and considered all the required factors but the appellant disagrees with the sentence imposed nonetheless, then our review is for an abuse of discretion. *See id.* at 552-53 (noting "a district court did not abuse its discretion if the evidence supports the sentence").

**III. Discussion.**

A flurry of sentencing cases have been handed down in the last few years by the United States Supreme Court and our supreme court. A summary of these cases alleging cruel and unusual sentences has been well documented in our case of *State v. Tuecke*, No. 15-0617, 2016 WL 1681524, at *3-8 (Iowa Ct. App. Apr. 27, 2016). We need not repeat it here.

The posture of this case requires us to review a resentencing decision to determine if, after an individualized sentencing hearing, the court properly applied the *Miller* factors.[2] Majors was a juvenile when he committed his crimes and was granted such a hearing. Ultimately, the district court concluded this was a rare case that necessitated the imposition of the mandatory-minimum seventy percent for the offense of attempted murder.

Majors asserts the district court abused its discretion in resentencing him, giving too much weight to some factors and too little weight to others. Appellate review for abuse of discretion "'is not to second guess the decision made by the district court, but to determine if it was unreasonable or based on untenable grounds.'" *Lyle*, 854 N.W.2d at 412 (quoting *State v. Formaro*, 638 N.W.2d 720, 724-25 (Iowa 2002)).

Recent precedent requires that a juvenile offender be given individualized sentencing consideration. *See Null*, 836 N.W.2d at 52-56 (providing an overview of juveniles, legal responsibility, and diminished culpability). An individualized sentencing hearing requires the court to consider several factors:

---

[2] *Miller v. Alabama*, 132 S. Ct. 2455 (2012).

(1) the "chronological age" of the youth and the features of youth, including "immaturity, impetuosity, and failure to appreciate risks and consequences"; (2) the "family and home environment" that surrounded the youth; (3) "the circumstances of the . . . offense, including the extent of [the youth's] participation in the conduct and the way familial and peer pressures may have affected [the youth]"; (4) the "incompetencies associated with youth—for example, [the youth's] inability to deal with police officers or prosecutors (including on a plea agreement) or [the youth's] incapacity to assist [the youth's] own attorneys"; and (5) "the possibility of rehabilitation."

*State v. Ragland*, 836 N.W.2d 107, 115 n.6 (Iowa 2013).

Additionally, our supreme court has stated that the purpose of an individualized sentencing hearing is for the court to "undertake an analysis of 'everything the United States Supreme Court said in *Roper* and *Graham*' about youth." *Null*, 836 N.W.2d at 74 (citation omitted). The trial court "must recognize that because children are constitutionally different from adults, they ordinarily cannot be held to the same standard of culpability as adults in criminal sentencing." *Id.* The court must also recognize that "juveniles are more capable of change than are adults and that as a result, their actions are less likely to be evidence of irretrievably depraved character." *Id.* at 75. "At the same time, it bears emphasis that while youth is a mitigating factor in sentencing, it is not an excuse." *Id.*

More recently, in *Seats*, the court explained further:

In sentencing the juvenile offender, the court must take into account any information in the record regarding "the family and home environment that surrounds him—and from which he cannot usually extricate himself—no matter how brutal or dysfunctional." In examining the "family and home environment," the judge shall consider any information regarding childhood abuse, parental neglect, personal and family drug or alcohol abuse, prior exposure to violence, lack of parental supervision, lack of an adequate education, and the juvenile's susceptibility to psychological or

emotional damage. The sentencing judge should consider these family and home environment vulnerabilities together with the juvenile's lack of maturity, underdeveloped sense of responsibility, and vulnerability to peer pressure as mitigating, not aggravating, factors.

. . . .

Finally, the sentencing judge must take into consideration that "[j]uveniles are more capable of change than are adults" and that as a result, "their actions are less likely to be evidence of 'irretrievably depraved character.'" . . . It is very difficult for a judge to distinguish between "'the juvenile offender whose crime reflects unfortunate yet transient immaturity, and the rare juvenile offender whose crime reflects irreparable corruption.'"

865 N.W.2d at 556 (citations omitted). The court "must take into account any *information in the record* regarding these factors. *Id.* (emphasis added).

In addition, we are guided by the 2014 decision of *Lyle*, 854 N.W.2d at 402. There, our supreme court noted that judges are not prohibited from sentencing juveniles to prison for the length of time identified by the legislature for the crime committed, and the legislature is not prohibited from imposing a minimum time that youthful offenders must serve in prison before being eligible for parole. *Lyle*, 854 N.W.2d at 402. But, the sentencing court is to "consider all the circumstances of each case to craft an appropriate sentence and give each juvenile the individual sentencing attention they deserve and our constitution demands." *Id.* The court identified the relevant sentencing factors to be considered by the district court:

Under article I, section 17 of the Iowa Constitution, the portion of the statutory sentencing schema requiring a juvenile to serve seventy percent of the period of incarceration before parole eligibility may not be imposed *without a prior determination by the district court that the minimum period of incarceration without parole is warranted* under the factors identified in *Miller* and further explained in *Null*.

*Id.* at 404 n.10 (citations omitted) (emphasis added).

But then in the case of *State v. Sweet,* ___ N.W.2d ___, ___ , 2016 WL 3023726, at *29 (Iowa 2016), the supreme court adopted a categorical rule that juvenile offenders may not be sentenced to life without the possibility of parole under article 1, section 17 of the Iowa Constitution. In reaching this conclusion, the supreme court decimated the use of the *Miller* factors, describing one factor as "not . . . very helpful," *Sweet*, 2016 WL 3023726 at *27, and another factor "fraught with risks." *Id.*, 2016 WL 3023726 at *28. Ultimately, the court stated the *Miller* factors cannot be applied in any principled way—at least as it pertains to whether parole eligibility should be granted for a juvenile defendant facing a life sentence.

Unfortunately, the principles in *Lyle*, requiring the application of the *Miller* factors to determine if a mandatory-minimum sentence should be imposed upon a juvenile offender serving or required to serve a term of years, were not overruled in *Sweet*. Therein lies our dilemma. Do we follow the principles of *Lyle*, or conclude the principles of *Lyle* have been completely eroded by the decision in *Sweet*?

We conclude the resolution of this question has been best answered in *Agostini v. Felton*, 521 U.S. 203 (1997). In *Agostini*, the United States Supreme Court stated,

> We do not acknowledge, and we do not hold, that other courts should conclude our more recent cases have, by implication, overruled an earlier precedent. We reaffirm that "[i]f a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions."

521 U.S. at 237 (alteration in original) (citing *Rodriguez de Quijas v. Shearson*, 490 U.S. 477, 484 (1989)).

Our supreme court has said much the same in stating,

> Yet it is the prerogative of this court to determine the law, and we think that generally the trial courts are under a duty to follow it as expressed by the courts of last resort, as they understand it, even though they may disagree. If our previous holdings are to be overruled, we should ordinarily prefer to do it ourselves.

*State v. Eichler*, 83 N.W.2d 576, 578 (Iowa 1957).

Because *Lyle,* as well as *State v. Pearson*, 863 N.W.2d 88, 95-97 (Iowa 2013), a similar case involving a juvenile offender facing a mandatory-minimum sentence, have not been overruled and directly control the issue before us, we remain bound by the principles of *Lyle.*

Here, the district court noted eight factors that it considered in reaching its sentencing decision:

> In considering the appropriate sentences to be imposed in this case, the court has considered the following factors: (1) the defendant's prior record of convictions; (2) the defendant's employment circumstances, including the defendant's economic circumstances; (3) the defendant's family circumstances; (4) the plea agreement; (5) the nature of offenses, including whether a weapon or force was used and the effect on the victims; (6) the maximum opportunity for rehabilitation of the defendant; (7) the protection of the community and society; and (8) the age of the defendant. In determining the appropriate sentences to be imposed the court considered the mitigating and aggravating circumstances, to the extent such circumstances exist, in relation to each of these factors.

The court then discussed each of those eight factors. After considering those factors, the court specifically found that Majors was the "exceptional case in which sentences providing for the maximum period of incarceration, including a mandatory minimum sentencing provision, are appropriate." The district court

did provide an individualized sentencing hearing, imposed a sentence within the allowable statutory framework, and carefully considered the factors stated in *Null* and *Lyle* to the extent the record reflected information on each factor.[3]  We cannot say the sentences imposed were unreasonable or based upon untenable grounds.  We find no abuse of discretion.  We affirm.

 **AFFIRMED.**

---

[3] We acknowledge the district court stated the older the juvenile—the more intelligent and mature they can expected to be.  The court in *Sweet* found this fact "not a very helpful factor" in determining if a juvenile facing a life sentence should be afforded immediate parole eligibility.  Although the child's age may not serve as a proper basis to determine maturity, the court gave consideration to the child's age as it was required to do, and we decline to be hyper-technical to say the court abused its discretion.