**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued June 3, 2021
Decided September 7, 2021

**Before**

DANIEL A. MANION, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

No. 20-3054

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>        *Plaintiff-Appellee*, | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 1:16-CR-00731(1) |
| CLIFFORD REED,<br>        *Defendant-Appellant*. | William T. Hart,<br>*Judge*. |

**O R D E R**

Clifford Reed pleaded guilty to selling heroin laced with other controlled substances, but he argues that the statutory penalty scheme for his crimes—as interpreted by the Supreme Court in *Chapman v. United States*, 500 U.S. 453 (1991)—is unconstitutional. But *Chapman* controls this case, and Reed's arguments that this court should set it aside lack support, so we affirm.

The facts in this case are straightforward and undisputed. In 2016, Clifford Reed sold a kilogram of heroin to a government informant. The heroin was laced with fentanyl and carfentanil (both controlled substances) and mixed with other, inert substances to dilute it for sale. Reed acknowledged that carfentanil was dangerous, referring to it as "elephant tranquilizer" and suggesting that heroin laced with carfentanil had caused eight recent deaths. Nevertheless, he asked the informant to help him purchase two kilograms of carfentanil to mix with future supplies of heroin. At that point, law enforcement agents stopped the car Reed and the informant were in, searched it and found the heroin, and arrested Reed.

The mixture that Reed sold to the informant weighed 996 grams, and he was eventually charged with distributing 100 grams or more of a mixture containing heroin, 400 grams or more of a mixture containing fentanyl, and 100 grams or more of a mixture containing carfentanil. 21 U.S.C. § 841(a)(1). Reed was initially charged with distributing more than a kilogram of heroin, but in a superseding indictment, the government revised its charge to lower the actual weight. Reed pleaded guilty to all three charges.

In the presentence report, the Probation Office calculated Reed's offense level by assigning the weight of the entire mixture to the drug resulting in the highest offense level, carfentanil. Since his crime involved more than 300 grams but less than 1 kilogram of carfentanil, the Probation Office assigned him a base offense level of 32. U.S.S.G. § 2D1.1(a)(5) and (c)(4). After a two-level reduction for accepting responsibility, and based on a criminal history category of VI, the Probation Office arrived at a guideline range of 168 to 210 months' imprisonment. It also found that his crime had a statutory minimum sentence of 120 months' imprisonment.

Reed objected to the PSR, arguing that he deserved a lower sentence because he posed less of a danger than a hypothetical offender who sold 996 grams of pure heroin or pure carfentanil. He introduced an expert's analysis of how much pure heroin (3.300%), fentanyl (0.082%), and carfentanil (0.077%) was in the mixture he sold. Based on these estimates—rather than the amount of the total mixture—he proposed that the correct guideline range should be only 37 to 46 months (based on an offense level of 14 rather than 30). For similar reasons, he argued that applying the statutory minimum would violate his Fifth Amendment right to due process. Reed acknowledged that his arguments went against *Chapman* and pointed to the dissent as a basis for relief. *See Chapman*, 500 U.S. at 468 (Stevens, J. dissenting).

The district court ruled that *Chapman* was controlling and that Reed's base offense level had been correctly calculated at 32. But it ruled in Reed's favor on another of his objections not relevant here, lowering his criminal history category to V and his guideline range to 151 to 188 months. In its discretion, the court granted Reed a downward variance and sentenced him to the 120-month statutory minimum.

Reed appeals solely on the question whether the weight of the mixture or the weight of the controlled substances should have been used to calculate his statutory minimum sentence and guideline range. He raises two arguments. First, this court should interpret the words "mixture" and "substance" so as not to include cases like his where the controlled substance is a small percent of the mixture. Second, the court should alternatively strike the statute, 21 U.S.C. § 841(b), as unconstitutional (at least as applied to him) because it "treat[s] dissimilarly situated defendants the same."

Neither of these arguments is persuasive, but Reed has a bigger problem. The Supreme Court already addressed these issues in *Chapman v. United States*, 500 U.S. 453 (1991), and ruled against the positions that he asks us to take. The Supreme Court there explained that the purpose of the "mixture or substance" language is to punish street traffickers like Reed who distribute drugs cut with inert substances so that they can be sold to consumers. Further, *Chapman* dismisses the idea that such a punishment regime is unconstitutional.

Reed acknowledged at oral argument that the majority opinion in *Chapman* undercuts his arguments. He suggests, however, that *Chapman* may not control his case because, unlike in *Chapman*, the diluting agents here made up the vast majority of the total weight. But *Chapman* makes no such distinction.

Reed further argues that this court can disregard or overturn *Chapman* for three reasons: (1) the majority's opinion is wrong; (2) it leads to unfair results; and (3) later cases "have moved away from the majority's holding in *Chapman*."

We cannot disregard binding precedent from the Supreme Court. *Cross v. United States*, 892 F.3d 288, 303 (7th Cir. 2018). This is true even if we believe a Supreme Court opinion is unpersuasive or leads to unfair results. *See id.* And even if later Supreme Court cases have questioned the reasoning of *Chapman* (the cases he cites do not), "the Court of Appeals should follow the case which directly controls, leaving to [the

Supreme] Court the prerogative of overruling its own decisions." *Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*, 490 U.S. 477, 484 (1989).

Relying primarily on the dissent in *Chapman*, Reed also argues that the terms "mixture" and "substance" in the statute are ambiguous. Since the majority's interpretation leads to an "absurd result," this court should interpret it differently. But Reed does not propose a definition of "mixture" or "substance" that would not include his brick of heroin. And *Chapman* provides definitions that do apply to his case, including "two substances blended together so that the particles of one are diffused among the particles of the other." *Chapman*, 500 U.S. at 462 (quoting 9 OXFORD ENGLISH DICTIONARY 921 (2d ed.1989)). In fact, both the majority and the dissent in *Chapman* agreed that heroin cut with other substances is a mixture under § 841(b).

Further, the statutory history makes clear that Reed's crime is exactly the sort that Congress intended to punish more severely when it adopted the current punishment regime. As described in *Chapman*, Congress tried several punishment schemes to deter the sale of controlled substances before enacting the current law. 500 U.S. at 460. As relevant here, the Comprehensive Drug Abuse Prevention and Control Act of 1970 prescribed penalties with no regard for the quantity of the drug distributed. Pub. L. 91-513, 84 Stat. 1236. Unsatisfied with the results of that Act, Congress then tied the prescribed punishments to the quantity of pure drug involved. *See* Comprehensive Crime Control Act of 1984, Pub. L. 98-473, 98 Stat. 2068. The current scheme took effect when Congress modified § 841(b)(1)(A) to punish street traffickers more heavily by tying the prescribed sentences to the weight of a "mixture or substance containing a detectable amount of" the drug. *See Chapman*, 500 U.S. at 460–61 ("Congress did not want to punish retail traffickers less severely, even though they deal in smaller quantities of the pure drug, because such traffickers keep the street markets going.") (citing H.R. Rep. No. 99-845, pt. 1, at 12 (1986)).

Reed next argues that the statute violates his Fifth Amendment right to due process. He does not provide any standards for evaluating such a right, apart from saying that his sentence is "absurd and irrational." But the Supreme Court held in *Chapman* that the penalty scheme at issue "is a rational sentencing scheme" that is "intended to punish severely large-volume drug traffickers at any level." *Id*. at 465 (citing H.R. Rep. No. 99-845, pt. 1, at 12, 17). By punishing drug traffickers based on the

"street weight" of their product (regardless of purity), Congress hoped to disrupt the business of selling drugs to consumers. *Id*.

Reed says that he is entitled to be sentenced based on his relative culpability. He maintains that he should not be punished as severely as a wholesaler who is responsible for selling far more doses of the same substances. He adds that he is being punished more severely than necessary to achieve the goals of sentencing stated in 18 U.S.C. § 3553(a). But these arguments were refuted directly in *Chapman*. "That distributors of varying degrees of culpability might be subject to the same sentence does not mean that the penalty system for [controlled substance] distribution is unconstitutional." *Chapman*, 500 U.S. at 467.

Finally, to the extent Reed persists in his argument that his guideline range should have been based on the weight of pure drugs that he sold, rather than the weight of the mixture, that argument fails. Even if the guidelines suggested a shorter prison term, the district court would still be bound by the statutory minimum to which Reed was sentenced. *See Koons v. United States*, 138 S. Ct. 1783, 1787 (2018).

For these reasons, we AFFIRM the judgment.