PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

        *Plaintiff-Appellant,*

      v.

WILLIAM P. DANIELCZYK, JR., a/k/a
Bill Danielczyk; EUGENE R. BIAGI,
a/k/a Gene Biagi,

        *Defendants-Appellees.*

 

CAMPAIGN LEGAL CENTER;
DEMOCRACY 21,

        *Amici Supporting Appellant,*

REPUBLICAN NATIONAL COMMITTEE;
CENTER FOR COMPETITIVE POLITICS;
JEFFREY D. MILYO, PH.D.; DAVID
M. PRIMO, PH.D.,

        *Amici Supporting Appellees.*

No. 11-4667

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
James C. Cacheris, Senior District Judge.
(1:11-cr-00085-JCC-1; 1:11-cr-00085-JCC-2)

Argued: May 18, 2012

Decided: June 28, 2012

Before TRAXLER, Chief Judge, and GREGORY and
DIAZ, Circuit Judges.

---

Reversed by published opinion. Judge Gregory wrote the
opinion, in which Chief Judge Traxler and Judge Diaz joined.

---

## COUNSEL

**ARGUED:** Michael R. Dreeben, UNITED STATES
DEPARTMENT OF JUSTICE, Washington, D.C., for Appel-
lant. Jeffrey A. Lamken, MOLOLAMKEN, LLP, Washing-
ton, D.C.; Lee Elton Goodman, LECLAIR RYAN, PC,
Washington, D.C., for Appellees. **ON BRIEF:** Neil H. Mac-
Bride, United States Attorney, Mark D. Lytle, Assistant
United States Attorney, OFFICE OF THE UNITED STATES
ATTORNEY, Alexandria, Virginia; Lanny A. Breuer, Assis-
tant Attorney General, Criminal Division, Richard C. Pilger,
Director, Election Crimes Branch, Eric L. Gibson, Trial Attor-
ney, Criminal Division, William M. Jay, Assistant to the
Solicitor General, UNITED STATES DEPARTMENT OF
JUSTICE, Washington, D.C., for Appellant. Todd M. Rich-
man, Assistant Federal Public Defender, OFFICE OF THE
FEDERAL PUBLIC DEFENDER, Alexandria, Virginia,
Chris Ashby, LECLAIR RYAN, PC, Washington, D.C.,
Joseph M. Rainsbury, LECLAIR RYAN, PC, Roanoke, Vir-
ginia, for Appellee Eugene R. Biagi; Michael G. Pattillo, Jr.,
Lucas M. Walker, MOLOLAMKEN, LLP, Washington, D.C.,
for Appellee William P. Danielczyk, Jr. Donald J. Simon,
SONOSKY, CHAMBERS, SACHSE, ENDRESON &
PERRY, LLP, Washington, D.C.; Fred Wertheimer,
DEMOCRACY 21, Washington, D.C.; J. Gerald Hebert, Tara
Malloy, Paul S. Ryan, THE CAMPAIGN LEGAL CENTER,
Washington, D.C., for Amici Supporting Appellant. John R.
Phillippe, Jr., Gary Lawkowski, REPUBLICAN NATIONAL

COMMITTEE, Washington, D.C., for Republican National Committee, Amicus Supporting Appellees. Allen Dickerson, CENTER FOR COMPETITIVE POLITICS, Alexandria, Virginia, for Center for Competitive Politics, Amicus Supporting Appellees. Terence P. Ross, Jessica M. Thompson, CROWELL & MORING LLP, Washington, D.C., for Jeffrey D. Milyo, Ph.D., and David M. Primo, Ph.D., Amici Supporting Appellees.

---

## OPINION

GREGORY, Circuit Judge:

The Government appeals the district court's grant of William P. Danielczyk, Jr. and Eugene R. Biagi's (the "Appellees") motion to dismiss count four and paragraph 10(b) of the indictment, alleging that they conspired to and did facilitate direct contributions to Hillary Clinton's 2008 presidential campaign in violation of 2 U.S.C. § 441b(a) of the Federal Election Campaign Act of 1971 ("FECA"), and 18 U.S.C. § 2.[1] The district court reasoned that in light of *Citizens United v. Federal Election Commission*, 130 S. Ct. 876 (2010), § 441b(a) is unconstitutional as applied to the Appellees. We disagree for the following reasons and thus reverse the district court's grant of the motion to dismiss count four and paragraph 10(b) of the indictment.

### I.

Danielczyk and Biagi were officers of Galen Capital Group, LLC, and Galen Capital Corporation (together, "Galen"). At the time of the charged conduct, Danielczyk was Galen's chairman, while Biagi was Galen's secretary. In

---

[1]The indictment also alleges that Danielczyk co-hosted a fundraiser for Clinton's 2006 Senate campaign. These allegations support counts that are not at issue in this appeal.

March of 2007, Danielczyk co-hosted a fundraiser for Clinton's campaign and had individuals, including Biagi, give donations to the campaign with the promise that they would be reimbursed by Galen. Danielczyk and Biagi concealed Galen's reimbursements by writing "consulting fees" on the reimbursement checks' memorandum lines, by issuing the checks for amounts larger than the actual contributions, and by creating false back-dated letters to the individual donors that characterized the reimbursement payments as "consulting fees." In total, Danielczyk and Biagi reimbursed the donors for $156,400 in contributions made to Clinton's 2008 campaign, and the campaign in turn reported the contributions to the Federal Election Commission.

Danielczyk and Biagi were indicted on seven counts for this contribution scheme. Count four and paragraph 10(b) respectively charged the Appellees with knowingly and willfully causing contributions of corporate money to a candidate for federal office, aggregating $25,000 or more, in violation of § 441b(a) and 2 U.S.C. § 437g(d)(1)(A)(i), and conspiring to do so. On April 6, 2011, Danielczyk and Biagi moved to dismiss count four, contending that § 441b(a) is unconstitutional as applied to them in light of *Citizens United*.

Prior to the Supreme Court's decision in *Citizens United*, § 441b(a) made it unlawful for corporations to make both direct contributions to political candidates and independent expenditures on speech that expressly advocates for or against the election or defeat of a candidate. However, the FECA permitted individuals to make independent expenditures and direct contributions within limits. *See, e.g.*, 2 U.S.C. § 441a(a). The act also allowed corporations wanting to make either type of expenditure to form political action committees ("PACs"), which were entities separate from the corporations subject to regulatory requirements. *See* 2 U.S.C. § 441b(b)(2)(C); 11 C.F.R. §§ 114.1(a)(2)(iii), (b), and 114.5(d). *Citizens United* struck down § 441b(a)'s prohibition against corporate independent expenditures, reasoning in part

that the ban was not supported by the interest in preventing quid pro quo corruption, 130 S. Ct. at 908-09, and further that "the First Amendment does not allow political speech restrictions based on a speaker's corporate identity," *id.* at 903. *Citizens United* left untouched § 441b(a)'s ban on direct corporate contributions.

Relying on *Citizens United*, the district court held that § 441b(a)'s ban on direct corporate contributions as applied to Galen is unconstitutional because it impermissibly treats corporations and individuals unequally for purposes of political speech. The district court rejected the Government's contention that the differential treatment of corporations in the context of direct contributions fulfills legitimate governmental interests, such as the prevention of quid pro quo corruption. It concluded that the interest in preventing quid pro quo corruption could be fulfilled by requiring corporations to comply with the act's contribution limits for individual donors.

Five days after it granted the motion to dismiss, the district court sua sponte ordered the parties to file briefs on whether, in light of *Agostini v. Felton*, 521 U.S. 203 (1997), and *Federal Election Commission v. Beaumont*, 539 U.S. 146 (2003), the court should reconsider its decision. In *Beaumont*, the Supreme Court rejected an as-applied challenge to § 441b(a)'s ban on direct corporate contributions. 539 U.S. at 163. The Government argued that *Beaumont* directly controlled the case and must be applied even if *Citizens United* may have eroded *Beaumont*'s reasoning. This is because the *Agostini* principle requires lower courts to apply Supreme Court precedent that directly controls the case before it despite subsequent Supreme Court case law that may have affected the precedent by implication. 521 U.S. at 237.

After considering the briefs, the district court denied reconsideration of its dismissal. It reasoned that *Beaumont* did not directly control the case because it addressed an as-applied challenge of § 441b(a)'s ban on direct corporate contributions

against a nonprofit corporation and not, as in this case, a for-profit corporation like Galen. The district court further affirmed the rationale in its earlier ruling that § 441b(a) violated *Citizens United* by treating corporations and individuals unequally. Accordingly, it concluded that count four and paragraph 10(b) remained dismissed. The Government timely appealed.

## II.

For the following reasons, we hold that § 441b(a) is not unconstitutional as applied to the Appellees. *Beaumont* clearly supports the constitutionality of § 441b(a) and *Citizens United*, a case that addresses corporate independent expenditures, does not undermine *Beaumont*'s reasoning on this point. The district court erred when it granted the Appellees' motion to dismiss.

## A.

The *Agostini* principle provides that in circumstances when Supreme Court precedent has "direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, [courts] should follow the line of cases which directly controls, leaving to [the Supreme] Court the prerogative of overturning its own decisions." *Agostini v. Felton*, 521 U.S. 203, 237 (1997) (quoting *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989)). Thus, lower courts should not conclude that the Supreme Court's "more recent cases have, by implication, overruled [its] earlier precedent." *Id.*

In *Beaumont*, the Supreme Court addressed a First Amendment challenge to § 441b(a) as it applied to nonprofit advocacy corporations. *Federal Election Commission v. Beaumont*, 539 U.S. 146, 156 (2003). In that case, North Carolina Right to Life, Inc. ("NCRL"), a nonprofit corporation organized to provide counseling to pregnant women and to

promote alternatives to abortion, brought an as-applied challenge to § 441b(a)'s ban on direct corporate contributions and independent expenditures. *Id.* at 150. A panel of this Circuit found the ban on both independent expenditures and direct contributions unconstitutional as applied to NCRL. *Beaumont v. FEC*, 278 F.3d 261, 279 (4th Cir. 2002), *rev'd by Beaumont*, 539 U.S. 146.

With respect to direct contributions, the panel reasoned that the ban was unjustified in light of *Federal Election Commission v. Massachusetts Citizens for Life, Inc.* ("MCFL"), 479 U.S. 238, 259 (1986), a decision in which the Supreme Court held that § 441b(a)'s ban on independent expenditures was unconstitutional as applied to a nonprofit corporation that, in many respects, was similar to NCRL. *Id.* at 275. As a result, the panel extended *MCFL*'s holding that solely addressed § 441b(a)'s ban on independent expenditures to the context of the provision's ban on direct contributions, concluding that "[i]n neither case is there the threat of quid pro quo, monetary influence, or distortion corruption that the prohibitions seek to prevent." *Id.* After this Circuit denied a rehearing en banc, the Federal Election Commission petitioned the Supreme Court for certiorari only on the issue of whether the ban on direct contributions was constitutional. *Beaumont*, 539 U.S. at 151.

In a 7-2 decision, the Supreme Court reversed this Circuit's opinion. 539 U.S. at 163. In doing so, the Supreme Court thoroughly explained its longstanding jurisprudence upholding Congress's "original, core prohibition on direct corporate contributions" and warned that this jurisprudence "would discourage any broadside attack on corporate campaign finance regulation of corporate contributions." *Id.* at 153, 156. It remarked that it had previously held that § 441b(a) had "broad applicability" to both corporations and labor unions regardless of their financial disposition and rejected NCRL's various arguments to limit this applicability, including that the ban did not adequately consider the variations between corporations with respect to affluence and diversity of corporate

form. *Id.* at 157. It then recognized four government interests that supported the ban on direct corporate contributions: anti-corruption, anti-distortion, dissenting-shareholder, and anti-circumvention (preventing the evasion of valid individual contribution limits). *Id.* at 153-55. The Supreme Court rejected NCRL's position that these government interests are implicated only by for-profit corporations, reasoning that non-profits, just like for-profits, benefit from state-created advantages, can amass political war chests, and are susceptible to corruption and misuse as conduits for circumventing individual contribution limits. *Id.* at 160. Thus, in addressing § 441b(a)'s applicability to a nonprofit advocacy corporation, the Court based its conclusion on a century of law that has supported bans on direct contributions against for-profit corporations. *Id.* at 157. Overall, *Beaumont* makes clear that § 441b(a)'s ban on direct corporate contributions is constitutional as applied to all corporations.

## B.

The Appellees contend that *Beaumont* does not govern our inquiry here because its holding was limited to nonprofit corporations. For the reasons expressed above, we do not read *Beaumont* so narrowly. *Beaumont* stands for the proposition that a nonprofit corporation does not differ from a for-profit corporation for purposes of § 441b(a) because all corporations implicate the asserted government interests, and § 441b(a) is closely drawn to further those interests. However, even if we did agree with the Appellees, we cannot ignore *Beaumont*'s extensive discussion of Congress's legitimate interests in regulating direct contributions made by *all* corporations. As the Supreme Court has stated, "When an opinion issues for the Court, it is not only the result but also those portions of the opinion necessary to that result by which we are bound." *Seminole Tribe v. Florida*, 517 U.S. 44, 67 (1996). Nor should we forget that NCRL recognized the uphill battle it faced in challenging the general ban on direct contributions and thus did not request complete upheaval of the law, but only that non-

profits, like it, be exempt. *Beaumont*, 539 U.S. at 156. Thus, at the very least, *Beaumont*'s discussion of the ban as it applies to all corporations informs our inquiry here.

C.

The Appellees would have this Court hold that *Citizens United* repudiated *Beaumont*'s entire reasoning; this we cannot do. *Citizens United* held that in the context of independent expenditures, the Government could not suppress political speech on the basis of the speaker's corporate identity. In reaching its decision, the Court did not discuss *Beaumont* and explicitly declined to address the constitutionality of the ban on direct contributions. *Citizens United v. Federal Election Commission*, 130 S. Ct. 876, 909 (2010). Nor did the opinion indicate that its "corporations-are-equal-to-people" logic necessarily applies in the context of direct contributions. *Id.* at 903. Leaping to this conclusion ignores the well-established principle that independent expenditures and direct contributions are subject to different standards of scrutiny and supported by different government interests. *See Preston v. Leake*, 660 F.3d 726, 735 (4th Cir. 2011) (concluding that *Citizen United* did not overrule "*Buckley* [*v. Valeo*, 424 U.S. 1 (1976)], *Nixon v.* [*Shrink Mo. Gov't PAC*, 528 U.S. 373 (2000)], *Beaumont*, or other cases applying 'closely drawn' scrutiny to contribution restrictions").

Independent expenditure limitations are "substantial rather than merely theoretical restraints on the quantity and diversity of political speech." *Buckley*, 424 U.S. at 19. "By contrast . . . a limitation upon the amount that any one person or group may contribute to a candidate or political committee entails only a marginal restriction upon the contributor's ability to engage in free communication," *id.* at 20-21, and thus "lie[s] closer to the edges than to the core of political expression," *Beaumont*, 539 U.S. at 161. The "markedly greater burden" on basic freedoms imposed by independent expenditure limitations requires that these limitations survive "exact scrutiny

applicable to limitations on core First Amendment rights of political expression." *Buckley*, 424 U.S. at 44.

Direct contribution limitations, on the other hand, require the "lesser demand of being closely drawn to match a sufficiently important interest." *Beaumont*, 539 U.S. at 162 (internal quotation marks omitted).[2] The reason for this difference in scrutiny is clear: independent expenditures, by definition, are direct means by which political speech enters into the marketplace, *see Citizens United*, 130 S. Ct. at 898; direct contributions, conversely, do not necessarily fund political speech but must be transformed into speech by an individual other than the contributor, *see Beaumont*, 539 U.S at 161-62. To minimize the constitutional differences between regulations that govern independent expenditures and regulations that ban direct contributions by applying *Citizens United* to this case would repeat the same error this Circuit committed in *Beaumont*. *See Beaumont*, 539 U.S. at 151 (rejecting this Circuit's conclusion that "the rationale utilized by the Court in [*MCFL*] to declare prohibitions on independent expenditures unconstitutional as applied to MCFL-type corporations is equally applicable in the context of direct contributions." (internal quotation marks omitted)).

As recently recognized by the Second and Ninth Circuits, *Citizens United* preserved two of the four important government interests recognized in *Beaumont*: anti-corruption and anti-circumvention.[3] *Ognibene v. Parkes*, 671 F.3d 174, 195

---

[2]The Appellees contest this standard of review only for the purpose of preserving the right to challenge it upon any later review by the Supreme Court. Appellee Br. 18. We note that this challenge has been rejected previously by the Supreme Court. *See Beaumont*, 539 U.S. at 161.

[3]The *Citizens United* court did reject the anti-distortion rationale as it was used to support the ban on independent expenditures when it overturned *Austin v. Mich. State Chamber of Commerce*, 494 U.S. 652 (1990). 130 S. Ct. at 913. The Court also disapproved of the dissenting-shareholder interest as justification for the ban on independent expenditures. *Id.* at 911.

n.21 (2d Cir. 2011) (declining to hold that *Beaumont* was overruled by *Citizens United*, and determining that *Citizens United* preserved the anti-corruption and anti-circumvention interests); *Thalheimer v. City of San Diego*, 645 F.3d 1109, 1125 (9th Cir. 2011) (holding that *Citizens United* did not disapprove of the anti-circumvention interest); *Green Party of Conn. v. Garfield*, 616 F.3d 189, 199 (2d Cir. 2010) ("Beaumont . . . remain[s] good law. Indeed, in the recent *Citizens United* case, the Court . . . explicitly declined to reconsider its precedent involving campaign *contributions* by corporations to candidates for elected office.").

Prevention of actual and perceived corruption and the threat of circumvention are firmly established government interests that support regulations on campaign financing. *See Beaumont*, 539 U.S. at 154; *Nixon*, 528 U.S. at 390 ("Even without the authority of *Buckley*, there would be no serious question about the legitimacy of the interest[ ] [of preventing corruption and the appearance of it] [ ], which, after all, underlie[s] bribery and anti-gratuity statutes."); *Buckley*, 424 U.S. at 27 ("Of almost equal concern as the danger of actual quid pro quo arrangements [through contributions] is the impact of the appearance of corruption stemming from public awareness of the opportunities for abuse."). While clarifying that the anti-corruption interest is limited to actual quid pro quo corruption or the appearance of it, as opposed to the appearance of influence or access, *Citizens United* did not deny that anti-corruption was a sufficiently important governmental interest, which is all that is required for closely drawn scrutiny. 130 S. Ct. 909-10. Instead, it held that the interest did not justify a ban on corporate independent expenditures under strict-scrutiny review. *Id.* at 911.

With respect to the anti-circumvention interest, the *Beaumont* court explained that without limitations on corporate contributions, individuals "could exceed the bounds imposed on their own contributions by diverting money through the corporation." 539 U.S. at 155. Thus the interest in preventing such evasion is grounded in the "experience" of "candidates,

donors, and parties [that] test the limits of the current law, and it shows beyond serious doubt how contribution limits would be eroded if inducement to circumvent them were enhanced." *Id.* (internal quotation marks and citations omitted).[4] *Citizens United* did not undercut *Beaumont*'s endorsement of this interest. Indeed, the majority opinion did not even discuss this interest when it struck down the independent expenditure ban, and thus prior Supreme Court precedent affirming this interest remains the law this Court must follow. *See e.g.*, *FEC v. Colo. Republican Fed. Campaign Comm.*, 533 U.S. 451, 456 (2001); *Cal. Med. Ass'n v. FEC*, 453 U.S. 182, 197-98 (1981).

## III.

For the foregoing reasons, we hold that the district court erred in granting the Appellees' motion to dismiss count four and paragraph 10(b) of the indictment.[5] The district court's grant of the motion to dismiss with respect to count four and paragraph 10(b) is reversed.

*REVERSED*

---

[4]The Appellees point to *McConnell v. Federal Election Commission*, 540 U.S. 93 (2003), a case decided after *Beaumont*, to support their challenge to the anti-circumvention interest. In *McConnell*, the Supreme Court found unconstitutional § 318 of the Bipartisan Campaign Reform Act of 2002, which prohibited minors from making direct contributions to candidates, and contributions or donations to political parties. 2 U.S.C. § 441K. *Id.* at 232. In doing so, the Court rejected the Government's argument that the provision protected against use of minors as conduits to circumvent individual-contribution limitations because there was "scant evidence" to support this form of evasion. *Id. McConnell* did not address *Beaumont*'s endorsement of the anti-circumvention interest in the context of a corporate contribution ban, which remains good law. And unlike *McConnell*, the result in *Beaumont* is supported by the separate interest in preventing quid pro quo corruption.

[5]Consequently, we do not address the parties' arguments regarding whether § 441b(a) is closely drawn to support the government interests asserted. We find that *Beaumont* forecloses this inquiry. *See, e.g.*, 539 U.S. at 160, n.7 (rejecting NCRL's suggestion that an earmark rule would be a better-tailored approach than the ban on direct contributions to fulfill the anti-circumvention interest).