**AMENDED ORDER**

**PUBLISHED**

FILED: August 12, 2014

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

**No. 10-6**
(3:08-cr-00134-RJC-2)

———————————

UNITED STATES OF AMERICA,

       Plaintiff – Appellee,

  v.

ALEJANDRO ENRIQUE RAMIREZ UMANA, a/k/a Wizard, a/k/a Lobo,

       Defendant – Appellant.

———————————

O R D E R

———————————

The Court denies the petition for rehearing en banc.

A requested poll of the Court failed to produce a majority of judges in regular active service and not disqualified who voted in favor of rehearing en banc. Judge Motz, Judge Gregory, Judge Keenan, Judge Wynn, and Judge Thacker voted to grant rehearing en banc. Chief Judge Traxler, Judge Wilkinson, Judge Niemeyer, Judge King, Judge Shedd, Judge Duncan, Judge Agee, and Judge Floyd voted to deny rehearing en banc. Judge Diaz recused himself and did not participate in the poll.

Judge Wilkinson wrote an opinion concurring in the denial of rehearing en banc, in which Judge Niemeyer joined. Judge Gregory wrote an opinion dissenting from the denial of rehearing en banc, in which Judge Wynn joined.

Entered at the direction of Judge Niemeyer.

For the Court

/s/ Patricia S. Connor, Clerk

WILKINSON, Circuit Judge, concurring in the denial of rehearing en banc:

Judge Niemeyer's fine opinion for the court fully addresses the points raised here by the dissent. United States v. Umaña, 750 F.3d 320 (4th Cir. 2014). I agree with that opinion, and add only these brief observations.

Were we to renounce Williams v. New York, 337 U.S. 241 (1949), this court would ignore a clear and consistent directive from the Supreme Court not to overturn higher precedent preemptively. In Rodriguez de Quijas v. Shearson/American Express, Inc., 490 U.S. 477 (1989), the court of appeals had declined to follow a decades-old Supreme Court case on the enforceability of arbitration agreements, Wilko v. Swan, 346 U.S. 427 (1953), because in the view of the court of appeals, the Court's intervening decisions on the construction of related federal statutes had reduced it to "obsolescence," Rodriguez de

2

Quijas v. Shearson/Lehman Bros., Inc., 845 F.2d 1296, 1299 (5th Cir. 1988). While the Court finally did overrule Wilko, Shearson, 490 U.S. at 484, its opinion is best remembered for one sentence that is pure ice: "If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions." Id.

The "tea leaves" for overruling were far clearer in Shearson than they are in this case. But the practice of circuit courts trying to anticipate, based on "trends," what the Supreme Court would do with an actual holding has not only raised eyebrows upstairs but had heretofore met with disfavor on our court. See, e.g., United States v. Danielczyk, 683 F.3d 611, 615 (4th Cir. 2012) ("Thus, lower courts should not conclude that the Supreme Court's 'more recent cases have, by implication, overruled [its] earlier precedent.'" (alteration in original) (quoting Agostini v. Felton, 521 U.S. 203, 237 (1997))), cert. denied, 133 S. Ct. 1459 (2013). Because Williams controls this case, I concur in the denial of the petition for rehearing en banc.

Williams examined which rules of evidence were applicable to "the manner in which a judge may obtain information to guide him in the imposition of sentence upon an already convicted

defendant" in a capital murder case. 337 U.S. at 246. In rejecting the view that the defendant enjoyed trial confrontation rights at sentencing, the Court noted:

> In addition to the historical basis for different evidentiary rules governing trial and sentencing procedures there are sound practical reasons for the distinction. . . . A sentencing judge, however, is not confined to the narrow issue of guilt. His task within fixed statutory or constitutional limits is to determine the type and extent of punishment after the issue of guilt has been determined. Highly relevant—if not essential—to his selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics. . . . It is urged, however, that we should draw a constitutional distinction as to the procedure for obtaining information where the death sentence is imposed. We cannot accept the contention.

337 U.S. at 246-47, 251.

The three circuits to have addressed this issue have found Williams to be controlling in capital sentencing cases. The procedures or sentencing criteria may vary, but a sentencing proceeding remains a sentencing. Its purpose of providing a complete and rounded sense of the one to be sentenced does not fluctuate with the identity of the sentencer or the severity of the sanction to be imposed. The Seventh Circuit explicitly stated that the "Confrontation Clause does not apply to capital sentencing," that "the Supreme Court . . . has never questioned the precise holding of Williams v. New York," and that it was not free to revisit the Williams decision. Szabo v. Walls, 313 F.3d 392, 398 (7th Cir. 2002). Likewise, the Eleventh Circuit

4

considered Williams controlling when it made clear that a defendant has a right to rebut before the jury information relevant to his character and record, but not to exercise full confrontation rights as to hearsay declarants. Muhammad v. Sec'y, Fla. Dep't of Corr., 733 F.3d 1065, 1074 (11th Cir. 2013). Finally, the Fifth Circuit grounded its opinion on Williams and indicated that it also was not free to revisit that decision. United States v. Fields, 483 F.3d 313 (5th Cir. 2007). Granting rehearing en banc in this case not only would fail to resolve a circuit split but in fact would risk creating one in the face of controlling Supreme Court precedent.

Unlike in Shearson, it is anything but clear here that the Supreme Court will overrule Williams. Numerous factors support Williams's continuing vitality, even after the passage of the Federal Death Penalty Act of 1994. Citing Williams, the Court recently continued to differentiate between a trial's guilt and sentencing phases and affirmed the broader evidentiary discretion attached to the latter. See Alleyne v. United States, 133 S. Ct. 2151, 2163 n.6 (2013) ("[J]udges may exercise sentencing discretion through 'an inquiry broad in scope, largely unlimited either as to the kind of information [they] may consider, or the source from which it may come.'" (alteration in original) (quoting United States v. Tucker, 404 U.S. 443, 446 (1972))); id. ("'[B]oth before and since the

American colonies became a nation, courts in this country and in England practiced a policy under which a sentencing judge could exercise a wide discretion in the sources and types of evidence used to assist him in determining the kind and extent of punishment to be imposed within limits fixed by law.'" (alteration in original) (quoting Williams v. New York, 337 U.S. 241, 246 (1949))). This position has been firm and consistent. See United States v. Watts, 519 U.S. 148, 154 (1997); Witte v. United States, 515 U.S. 389, 399-401 (1995); Nichols v. United States, 511 U.S. 738, 747-48 (1994). It is not just that an "already convicted defendant," Williams, 337 U.S. at 244, no longer benefits from the presumption of innocence in the sentencing phase. Practical considerations likewise counsel against formal constrictions that may not only impede the quest for a full human picture in all of its complexity, but lay the groundwork for additional sparring and sow the seeds for added assignments of error.

Circumscribing these rights does not leave the convicted defendant without protection from unreliable evidence. Due process requires that the broader range of evidence available during sentencing still possess sufficient indicia of reliability. United States v. Powell, 650 F.3d 388, 393-94 (4th Cir. 2011); see also U.S. Sentencing Guidelines Manual § 6A1.3(a) (2013). The defendant also retains the opportunity

for rebuttal of adverse evidence. Gardner v. Florida, 430 U.S. 349, 362 (1977); see also U.S. Sentencing Guidelines Manual § 6A1.3. Furthermore, the Supreme Court has identified certain "structural errors" that "undermine the fairness of the entire criminal proceeding" and require automatic reversal. United States v. Davila, 133 S. Ct. 2139, 2142 (2013); see also Arizona v. Fulminante, 499 U.S. 279, 310 (1991). Among these structural errors are violations of the rights to counsel and to an unbiased judge, both of which are retained during sentencing. Fulminante, 499 U.S. at 308-10; Gardner, 430 U.S. at 358. Confrontation Clause violations, by contrast, are subject to harmless error analysis. Delaware v. Van Arsdall, 475 U.S. 673, 680, 684 (1986). The trial right to confrontation and cross-examination remains part of our imperishable inheritance of liberty, see Crawford v. Washington, 541 U.S. 36, 50-51 (2004), but it is not among the constitutional accoutrements of sentencing, in part because "Williams shows that witnesses providing information to the court after guilt is established are not accusers within the meaning of the confrontation clause," United States v. Roche, 415 F.3d 614, 618 (7th Cir. 2005).

It is not our office to create a circuit split, preemptively overturn Supreme Court holdings, and attempt to force the Court's hand. It bears note that the hierarchical

nature of the judicial system lends to law a stability and consistency that would be lost if, for example, district courts treated our rulings in the fashion urged by those with a more aggressive view of the intermediate appellate role. Society lives by law. When courts, convened in their roles as guardians of law, set the example of abiding by law, society as a whole will replenish its faith in our most cherished institutions.

Judge Niemeyer joins me in this opinion.

GREGORY, Circuit Judge, dissenting from the denial of rehearing en banc:

The government used unconfronted accusations from police informants to send a man to his death. I strongly believe that this violated Mr. Umaña's Sixth Amendment rights. My full reasoning is set out in my dissent. United States v. Umaña, 750 F.3d 320, 360–70 (4th Cir. 2014). With all due respect, I consider our refusal to rehear this case en banc to be a grave mistake. However, I write today to explain why I believe that Supreme Court review of Mr. Umaña's argument is warranted.

I believe Supreme Court review is vital because this Court and the district court misread the past five decades of Supreme Court jurisprudence on the Sixth Amendment and the death penalty. Further, I believe this misreading is the difference between Mr. Umaña living and dying. The conviction supporting the death sentence was a gang-related double murder that occurred after an argument in a bar. Though this crime was

8

appalling, it is unlikely that it alone would have supported a death sentence, given Mr. Umaña's lack of previous convictions. Rather, the reason Mr. Umaña now faces execution is that the prosecutor was able to introduce out-of-court accusations from police informants that accused Umaña of several previous murders. An examination of the government's summation argument at sentencing demonstrates this: nearly every page of the transcript references these past murders. Umaña, 750 F.3d at 362 (collecting references to past murders) (Gregory, J., dissenting). For the reasons set out in my dissent, these accusers were not tenable witnesses: they would likely not have withstood the scrutiny of cross-examination. Mr. Umaña was never given this chance, however. Instead, the court substituted a reliability finding for Umaña's Sixth Amendment rights, and the result was that the jury sentenced Umaña to death.

As Justice Scalia writes, "[d]ispensing with confrontation because testimony is obviously reliable is akin to dispensing with jury trial because a defendant is obviously guilty." See Crawford v. Washington, 541 U.S. 36, 62 (2004). "This is not what the Sixth Amendment prescribes." Id. Further buttressing my view is that this constitutional violation occurred during a Federal Death Penalty Act trial, in which a jury is required to make factual findings before a death sentence is within the permissible range of punishments. 18 U.S.C. § 3593(e) (requiring a jury to find the existence of enumerated

9

aggravating factors, any additional aggravating factors, and that all aggravating factors outweigh all mitigating factors before death is permissible). Even in sentencing proceedings, certain Sixth Amendment rights apply for factfinding that can increase the range of punishments. Ring v. Arizona, 536 U.S. 584, 589 (2002). "[A]ll facts essential to imposition of the level of punishment that the defendant receives -- whether the statute calls them elements of the offense, sentencing factors, or Mary Jane -- must be found by the jury beyond a reasonable doubt." Id. at 610 (Scalia, J., concurring). Thus, the primary reason that I believe Supreme Court review is necessary in this case is because the district court's decision, and our panel opinion affirming it, do not heed the clear trend that Crawford and Ring represent.

However, even if my view on the reach of the Confrontation Clause is incorrect, Supreme Court review is still vital in order to resolve the tension in current death penalty doctrine and to achieve uniformity across federal prosecutions. The panel's decision is driven in large part by the Supreme Court's ruling in Williams v. New York. 337 U.S. 241 (1949). That case held that under the Due Process Clause, the defendant did not have a right to confront his accusers during New York's death sentencing procedure, in which a judge had discretion to reject a jury-imposed life sentence for a death sentence. Id. The reason I respectfully disagree with the majority opinion is that since Williams, several lines of Supreme Court cases have

10

created a sea change in death penalty procedure and Sixth Amendment doctrine. See Crawford, 541 U.S. 36 (overruling precedent to find that reliability finding cannot substitute for cross-examination); Ring, 536 U.S. 584 (overruling precedent to find that Sixth Amendment can apply during sentencing); Furman v. Georgia, 408 U.S. 238 (1972) (holding that death penalty cannot be imposed using sentencing procedures that create a risk of arbitrary and discriminatory enforcement). In fact, Williams was decided before it was even accepted that the Sixth Amendment applied to state sentencing procedures in the first place. Thus, while the majority and I disagree on the reach of the Confrontation Clause, it is clear that there is tension in Supreme Court case law. Ring and Crawford suggest a broader understanding of Sixth Amendment rights and Furman creates more muscular requirements for death sentencing procedure, and these developments postdate the Williams decision. While Williams has not been overruled, this tension suggests that it must be revisited in light of our modern understanding of the Sixth Amendment and the quality of procedure necessary for the government to take a man's life.

More importantly, this tension in Supreme Court case law has fostered a lack of uniformity in federal death sentencing procedure that creates intolerable unfairness. The end result is that a defendant's constitutional rights depend on the whims or strategic maneuvering of the prosecutor. In the absence of Supreme Court guidance, district courts across the country have

11

reached conflicting views on whether the Confrontation Clause applies throughout a Federal Death Penalty Act trial, with some courts adopting my view and others adopting the majority's view that the rights only apply to the initial stage of capital sentencing. Compare United States v. Umaña, 707 F. Supp. 2d 621, 633 (W.D.N.C. 2010) (finding Confrontation Clause rights in first stage of federal capital sentencing but not the second stage), with United States v. Stitt, 760 F. Supp. 2d 570, 581-82 (E.D. Va. 2010) (finding Confrontation Clause rights in both stages of federal capital sentencing), and United States v. Sablan, 555 F. Supp. 2d 1205 (D. Colo. 2007) (same). Circuit court judges, too, have disagreed on this precise issue.* The result is that in federal capital trials – the most important possible proceeding of a defendant's life -- the scope of a defendant's Sixth Amendment rights depends on the district in which the case is brought. See, e.g., Umana, 707 F. Supp. at 633 ("Absent guidance from the Supreme Court or the Fourth Circuit, the district courts are left to determine this issue."); United States v. Mills, 446 F. Supp. 2d 1115, 1122 (C.D. Cal. 2006) (noting its struggle "to apply the Supreme Court's decision in Crawford" and lamenting that "recent Supreme

---

*See Muhammad v. Sec'y, Fla. Dep't of Corr., 733 F.3d 1065 (11th Cir. 2013) (divided panel opinion finding that Confrontation Clause does not apply to capital cases after guilty verdict); United States v. Fields, 483 F.3d 313, 324–338 (5th Cir. 2007) (same); Proffitt v. Wainwright, 685 F.2d 1227, 1252–53 (11th Cir. 1982) (finding a right to cross examine the author of a psychiatric report under the Sixth Amendment during sentencing) modified, 706 F.2d 311 (expressly limiting case to psychiatric reports).

Court decisions complicate the matter"). Thus, even if my view is wrong, Supreme Court review is necessary to ensure fairness and uniformity in federal death cases. The scope of a defendant's Sixth Amendment rights should not depend on the venue in which a case is brought.

Justice Scalia has lamented that "the repeated spectacle of a man's going to his death" without the Sixth Amendment protection of jury factfinding "accelerate[s]" the "perilous decline" of "our people's traditional belief in the right of trial by jury." Ring, 536 U.S. at 612 (Scalia, J., concurring). He argues that "we render ourselves callous to the need for that protection by regularly imposing the death penalty without it." Id. I firmly believe that these words are as true for the Confrontation Clause of the Sixth Amendment as they are for the jury clause. There is no doubt that Mr. Umaña is being sent to his death in large part based on accusations of murder for which he was never charged, much less convicted. There is no doubt that the basis for these accusations was weak and would have withered under the scorching sunlight of cross-examination. Mr. Umaña was never given this opportunity, however. For the Framers of the Constitution, this state of facts was unacceptable when they occurred in England in the infamous Sir Walter Raleigh trial. Crawford, 541 U.S. at 44, 62. I consider it just as unacceptable today. Accordingly, I dissent.

Judge Wynn joins in this dissent.

13