22-666-cr
United States v. Kukushkin

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

_____

August Term, 2022

(Argued:      September 15, 2022                              Decided: March 8, 2023)

Docket No. 22-666-cr

_____

UNITED STATES OF AMERICA,

*Appellee*,

v.

ANDREY KUKUSHKIN,

*Defendant-Appellant*.[1]

_____

Before: POOLER, LOHIER, and NATHAN, *Circuit Judges*.

The Federal Election Campaign Act ("FECA") requires that a defendant act

willfully to be guilty of aiding and abetting the making of a campaign

---

[1] The Clerk of the Court is directed to amend the caption as above.

contribution by a foreign national. 52 U.S.C. § 30109(d)(1)(A). Andrey Kukushkin appeals from the March 15, 2022 judgment entered in the United States District Court for the Southern District of New York (J. Paul Oetken, *J.*) following a jury trial where he was convicted of one count of conspiring to illegally donate monies to a political campaign in violation of 52 U.S.C. §§ 30121, 30122 and 18 U.S.C. § 371 and one count of aiding and abetting over $25,000 of such donations in violation of 52 U.S.C. § 30121 and 18 U.S.C. § 2.

In this opinion, we address Kukushkin's argument that the district court erred in giving the standard jury instruction on willfulness: that "a person acts 'willfully' when he acts with a 'bad purpose' to disobey or disregard the law. It is not, however, necessary for the government to prove that the defendant was aware of the specific provision of the law that he is charged with violating." App'x at 118-19. Because FECA is a highly technical statute, akin to federal criminal tax laws, Kukushkin argues that a heightened standard of willfulness is required, similar to the charge provided for certain tax crimes. *See, e.g.*, *Cheek v. United States*, 498 U.S. 192, 206-07 (1991). Rather than the standard willfulness charge, Kukushkin argues the district court should have charged the jury that it

must find he knew the meaning and existence of the specific FECA provisions he allegedly violated, or conspired to violate.

Kukushkin also challenges the district court's refusal to 1) instruct the jury that for count one, a co-conspirator must knowingly and willfully join the conspiracy with the "intent[] of achieving [the alleged conspiracy's] unlawful objectives, namely violation of the federal election laws;" App'x at 104, and 2) to provide e a good faith defense charge.

As we find no error with the district court's charge, we affirm. The remaining issues Kukushkin raises on appeal are addressed in a summary order also issued today.

Affirmed.

_____

CELESTE L.M. KOELEVELD, Clifford Chance US LLP (Ivana Djak, Alexandra Day Coyle, *on the brief*), New York, NY, *for Appellant*.

ALINE R. FLODR, Assistant United States Attorney (Nicholas Roos, Hagan Scotten, Danielle R. Sassoon, Assistant United States Attorneys, *on the brief*), *for* Damian Williams, United States Attorney for the Southern District of New York, New York, NY, *for Appellee*.

POOLER, *Circuit Judge*:

The Federal Election Campaign Act ("FECA") requires that a defendant act willfully to be guilty of aiding and abetting the making of a campaign contribution by a foreign national. 52 U.S.C. § 30109(d)(1)(A). Andrey Kukushkin appeals from the March 15, 2022 judgment entered in the United States District Court for the Southern District of New York (J. Paul Oetken, *J.*) following a jury trial where he was convicted of one count of conspiring to illegally donate monies to a political campaign in violation of 52 U.S.C. §§ 30121, 30122 and 18 U.S.C. § 371 and one count of aiding and abetting over $25,000 of such donations in violation of 52 U.S.C. § 30121 and 18 U.S.C. § 2.

In this opinion, we address Kukushkin's argument that the district court erred in giving the standard jury instruction on willfulness: that "a person acts 'willfully' when he acts with a 'bad purpose' to disobey or disregard the law. It is not, however, necessary for the government to prove that the defendant was aware of the specific provision of the law that he is charged with violating." App'x at 118-19. Because FECA is a highly technical statute, akin to federal criminal tax laws, Kukushkin argues that a heightened standard of willfulness is required, similar to the charge provided for certain tax crimes. *See, e.g.*, *Cheek v.*

4

*United States*, 498 U.S. 192, 206-07 (1991). Rather than the standard willfulness charge, Kukushkin argues the district court should have charged the jury that it must find he knew the meaning and existence of the specific FECA provisions he allegedly violated, or conspired to violate.

Kukushkin also challenges the district court's refusal to 1) instruct the jury that for count one, a co-conspirator must knowingly and willfully join the conspiracy with the "intent[] of achieving [the alleged conspiracy's] unlawful objectives, namely violation of the federal election laws;" App'x at 104, and 2) to provide e a good faith defense charge.

As we find no error with the district court's charge, we affirm. The remaining issues Kukushkin raises on appeal are addressed in a summary order also issued today.

## BACKGROUND

The jury found that Kukushkin conspired with his co-defendants, Lev Parnas and Igor Fruman, to illegally donate Russian national Andrey Muraviev's money to a number of political candidates in states where the defendants planned to seek licenses to operate cannabis-related businesses. Kukushkin was also convicted of aiding and abetting in the use of Muraviev's money to make

illegal political contributions without disclosing Muraviev's name. A thorough discussion of the underlying facts in this matter is found in the district court's opinion. *See United States v. Parnas*, No. 19-CR-725, 2022 WL 669869 (S.D.N.Y. Mar. 7, 2022). We discuss only the facts necessary to explain our analysis.

The government introduced evidence at trial demonstrating that in 2018, Kukushkin—who represented Muraviev's interests in the United States—entered into an agreement with Parnas and Fruman to funnel Muraviev's money to American politicians. As detailed below, the group coordinated their plans through in-person meetings and regular electronic communications, resulting in Kukushkin helping to arrange the transfer of one million dollars from Muraviev to Parnas, Fruman, and their associate David Correia. Of that, roughly $150,000 was used to fund donations to American political candidates in the 2018 election cycle.

The government introduced a number of communications between the defendants at trial to support its argument that Muraviev's money was intended for, and used in part for, political donations. For example, Kukushkin texted Parnas: "Leva, the money where wired to Global Energy"—a company controlled by Parnas and Fruman—"in order to cover all the donations

6

whatsoever," App'x at 202; "please allocate 10% of the existing donation funds," App'x at 165; "[w]e were supposed to tell [a political candidate] that the check(s) from Global are indeed the donations from us," App'x at 203; "the money was transferred ~$1M to Lev [Parnas's] & Igor [Fruman]'s company a long time ago to cover all the contributions as planned," App'x at 189. Kukushkin told Fruman and Parnas that "[y]ou are the one issuing [the politicians] the checks NOT me or Andrey [Muraviev]." App'x at 202. Kukushkin directed Fruman and Parnas to make clear that any donations from Global Energy were actually intended for the benefit of the cannabis venture. A communication in late October 2018 from Kukushkin to Parnas and Fruman stated that the two had "clarity from day 1" about their "precise course of action," which was "[m]oney transferred by Andrey M [Muraviev] to Global Energy" in order "to support the very specific people & states (per Igor's table) in order to obtain green light for licensing." App'x at 194.

"Igor's table" referenced charts put together by Fruman to outline intended political donations funded with the "money transferred by" Muraviev in order to secure licenses for the cannabis business. App'x at 194. One such chart was entitled "Cannabis Schedule and budget." App'x at 147, 156.1. Kukushkin

sent Muraviev a copy of that chart, with a note that it was "necessary" to "confirm the transfer" of $500,000 to "the guys." App'x at 156.1. Muraviev, both individually and in groups, corresponded with defendants about the donations.

The government also introduced evidence that Kukushkin and the other conspirators worked to conceal Muraviev's role in the cannabis venture, even though Muraviev participated openly in other U.S. cannabis businesses. Kukushkin instructed Fruman and Parnas no donations were to be made in Muraviev's name. Muraviev moved the money for political contributions from companies in Cyprus through a bank account controlled by Fruman's brother. Kukushkin discussed omitting Muraviev's name from the corporation being formed for the cannabis venture, and his name ultimately was omitted. Other evidence demonstrated that Fruman and Parnas made political donations that were funded or reimbursed by Muraviev, including donations to the Protect the House joint fundraising committee, Friends of Ron DeSantis, as well as to Adam Laxalt, then-Attorney General of Nevada, and Wes Duncan, who was running for Nevada Attorney General.

After the jury convicted Kukushkin, he moved for acquittal or a new trial. The district court denied both motions. *Parnas*, 2022 WL 669869, at * 10.

Kukushkin was sentenced to a year and a day imprisonment and fined $10,000.

This appeal followed.

**ANALYSIS**

FECA makes it illegal to engage in certain conduct related to political donations. As relevant here, foreign nationals are barred from "directly or indirectly" donating in federal, state or local elections. 52 U.S.C. § 30121(a). It is also illegal to make a "contribution in the name of another person." 52 U.S.C. § 30122. Criminal penalties of up to five years' imprisonment attach to violations of Sections 30121 and 30122 where 1) the donations amount to $25,000 or more in one calendar year, and 2) the person acts "knowingly and willfully." *See* 52 U.S.C. § 30109(d).

Count one of the indictment charged Kukushkin with conspiring to make contributions by a foreign national in violation of 18 U.S.C. § 371. It alleged the conspiracy had three objects: 1) to knowingly and willfully make political donations by a foreign national of at least $25,000 in a calendar year, in connection with federal and state elections, in violation of 52 U.S.C. § 30121; 2) to knowingly and willfully make political donations in the names of other persons of at least $25,000 in a calendar year, in violation of 52 U.S.C. § 30122; and 3) to

9

knowingly defraud the United States by interfering with the Federal Election Commission's function to administer federal law concerning monetary source and amount restrictions in federal and state elections, including the prohibitions applicable to foreign nationals and straw donors. Count Three charged Kukushkin with knowingly and willfully aiding and abetting the solicitation of over $25,000 in such donations in violation of 52 U.S.C. § 30121 and 18 U.S.C. § 2.

At issue here is what constitutes acting "knowingly and willfully" to violate FECA. Kukushkin requested a jury instruction charging that the government needed to prove a "heightened standard of willfulness." App'x at 103. Because the election and campaign finance laws are highly technical and complex, he argued, the jury charge should direct he could be convicted only upon a showing that he knew of the existence and meaning of the FECA provisions he was charged with violating and conspiring to violate. App'x at 103. He also asked the district court to instruct the jury that a co-conspirator must knowingly and willfully join the conspiracy with the "intent[] of achieving [the alleged conspiracy's] unlawful objectives, namely violation of the federal election laws." App'x at 104. Finally, Kukushkin asked the district court to give a good faith defense instruction.

The district court declined each of Kukushkin's requests, and instead gave the standard general willfulness charge:

> An act is done willfully if the defendant acted with knowledge that some part of his course of conduct was unlawful and with the intent to do something the law forbids, and again not by mistake or accident. In other words, a person acts "willfully" when he acts with a "bad purpose" to disobey or disregard the law. It is not, however, necessary for the government to prove that the defendant was aware of the specific provision of the law that he is charged with violating. Rather, it is sufficient for the defendant to act knowing that his conduct is unlawful, even if he does not know precisely which law or regulation makes it so.

App'x at 118-19. As to conspiratorial intent, the district court charged that:

> The second element the government must prove beyond a reasonable doubt to establish the offense of conspiracy is that the defendants knowingly, willfully and voluntarily became members of the alleged conspiracy with the intent of achieving its unlawful objective. I have already instructed you on the definitions of knowingly and willfully, and you should apply those definitions here.

App'x at 121-22. The district court declined to give a good faith instruction.

Kukushkin argues that the district court's refusal to instruct the jury as he requested constitutes reversible error.

11

"We review a claim of error in jury instructions *de novo,* reversing only where, viewing the charge as a whole, there was a prejudicial error." *United States v. Aina-Marshall*, 336 F.3d 167, 170 (2d Cir. 2003). When a district court declines to deliver a requested instruction, a defendant bears the "heavy burden" of showing that the charge given was prejudicial. *United States v. Feliciano*, 223 F.3d 102, 116 (2d Cir. 2000). "A conviction will not be overturned for refusal to give a requested charge . . . unless that [requested] instruction is legally correct, represents a theory of defense with basis in the record that would lead to acquittal, and the theory is not effectively presented elsewhere in the charge." *United States v. Holland*, 381 F.3d 80, 84 (2d Cir. 2004) (alterations in original) (internal quotation marks omitted).

## I. Willfulness

"The general rule that ignorance of the law or a mistake of law is no defense to criminal prosecution is deeply rooted in the American legal system." *Cheek*, 498 U.S. at 199. That said, any number of crimes—including the FECA violations at issue here—require that a defendant "knowingly and willfully" violated the law. In *Bryan v. United States*, the Supreme Court held that "when used in the criminal context, a willful act is one undertaken with a bad purpose.

12

In other words, in order to establish a willful violation of a statute, the Government must prove that the defendant acted with knowledge that his conduct was unlawful." 524 U.S. 184, 191-92 (1998) (internal footnote and quotation marks omitted).

The defendant in *Bryan* challenged his conviction for selling firearms without a federal license. *Id.* at 189. The offense at issue required the government prove Bryan acted willfully. *Id.* at 188-89. Bryan argued that as he was unaware of the specific federal licensing requirements at issue, his actions did not satisfy the willfulness element. *Id*. at 189-90. The Supreme Court rejected that argument, holding that a statute with a "willfulness" requirement does not require the government to prove a defendant acted with a specific intent to commit a particular crime, because "knowledge that the conduct is unlawful is all that is required." *Id*. at 196. While *Bryan* involved a federal firearms conviction, "this court has recognized that its definition of willfulness is generally applicable." *United States v. Kosinski*, 976 F.3d 135, 154 (2d Cir. 2020).

There are two notable exceptions to this general rule. The Supreme Court held that "in certain cases involving willful violations of the tax laws . . . the jury must find that the defendant was aware of the specific provision of the tax code

13

that he was charged with violating." *Bryan*, 524 U.S. at 194 (citing *Cheek,* 498 U.S. at 201). And in *Ratzlaf v. United States*, a currency structuring case, the Court "concluded that the jury had to find that the defendant knew that his structuring of cash transactions to avoid a reporting requirement was unlawful." *Id.* (citing 510 U.S. 135, 138 (1994)). The Court distinguished *Cheeks* and *Ratzlaf* from the firearms violations in *Bryan*, noting that both cases involved "highly technical statutes that presented the danger of ensnaring individuals engaged in apparently innocent conduct.*" Id.* But "[t]he danger of convicting individuals engaged in apparently innocent activity that motivated our decisions in the tax cases and *Ratzlaf* [was] not present [in *Bryan*] because the jury found that this petitioner knew that his conduct was unlawful." *Id.* at 195. Thus, a statute's willfulness requirement does not require the government to prove specific intent unless the statute is highly specialized and complex and implicates seemingly innocent conduct.

*Bryan* makes clear that *Cheek* and *Ratzlaf* are the exception, not the rule. Indeed, every Circuit to have considered the issue of whether FECA is so "highly technical" as to require a heightened pleading standard has held it is not and does not. See *United States v. Smukler*, 991 F.3d 472, 485-86 (3d Cir. 2021) (Section

14

30122); *United States v. Singh*, 979 F.3d 697, 712-14 (9th Cir. 2020) (Section 30121); *United States v. Benton*, 890 F.3d 697, 715 (8th Cir. 2018) (applying *Bryan* standard to false campaign expenditure charge); *see also United States v. Lundergan*, No. 5:18-cr-00106, 2020 WL 3895771, at *7 (E.D. Ky. July 10, 2020) (applying *Bryan* standard in unlawful corporate contribution case); *United States v. Danielczyk*, 917 F. Supp. 2d 573, 579–80 (E.D. Va. 2013) (applying *Bryan* standard applied to predecessor of Section 30122).

We agree. FECA may not be as straightforward as other statutes, but is not as highly technical and complicated as the tax code at issue in *Cheek*, nor does it pose the same threat of accidental violation as the anti-structuring laws at issue in *Ratzlaf*. As the Third Circuit aptly noted, "FECA packs in rules for contributions (and a host of other conduct) that candidates, campaigns, and contributors must follow when engaging in election politicking. But those rules are reasonably straightforward and written in common terms." *Smukler*, 991 F.3d at 486. When "compared with anti-structuring or tax laws, as in *Ratzlaf* or *Cheek*, individual campaign contribution laws are more intuitive and less complex." *United States v. Danielczyk*, 788 F. Supp. 2d 472, 490 (E.D. Va. 2011), *reversed in part on other grounds*, 683 F.3d 611 (4th Cir. 2012). And as the Ninth Circuit observed,

FECA is "not a technical statute, nor does it present the same concern of inadvertently ensnaring uninformed individuals" that the criminal tax laws and structuring laws do. *Singh*, 979 F.3d at 712. FECA "simply prohibits foreign nationals from donating or contributing to candidates or political parties." *Id*. at 713. We find no error in the district court declining to charge the jury with a heightened willfulness standard.

**II.     Conspiratorial intent**

Kukushkin next argues that the district court erred when it declined his request to instruct the jury that the "government had to prove that Kukushkin knowingly and willfully became a member of the alleged conspiracy charged in Count One with the intent of achieving a '*violation of the federal election laws*.'" Appellant's Br. at 52. However, it is settled that a court need not restate the conspiracy's unlawful objective while charging the jury. *See, e.g.*, *United States v. Salameh*, 152 F.3d 88, 145-46 (2d Cir. 1998) (rejecting the argument that the court should have instructed that government had to prove "specific knowledge and intent to," as alleged there, "bomb the World Trade Center"). The district court here appropriately charged the jury that it had to find Kukushkin "knowingly, willfully and voluntarily" joined the conspiracy "with the intent of achieving its

16

unlawful objective." App'x 121–22. It was under no obligation to restate that objective when giving the willfulness charge.

### III. Good faith charge

Finally, Kukushkin argues the district court erred in refusing to charge the jury on the availability of a good faith defense, as "[a] defendant is entitled to a jury charge which reflects his defense." *United States v. Doyle*, 130 F.3d 523, 540 (2d Cir. 1997). Kukushkin argues that because his good faith defense was not adequately reflected in the district court's charge, reversal is required. Again, we disagree.

The district court charged the jury that the government needed to prove Kukushkin acted willfully, knowingly, and voluntarily. As the district court aptly noted, "to have found that Defendants acted willfully, the jury had to conclude beyond a reasonable doubt that they intentionally did something that the law forbids, the opposite of good faith." *Parnas*, 2022 WL 669869, at *6. Where, as here, the district court correctly instructed the jury as to knowledge and willfulness and the defendant's theory was thus "effectively presented elsewhere in the charge," its refusal to provide a separate "good faith defense" instruction is not reversible error. *Doyle*, 130 F.3d at 540 (internal quotation marks

17

omitted); *see also United States v. McGinn,* 787 F.3d 116, 126 (2d Cir. 2015) (holding that even in a tax case, no good faith instruction was required because the "standard jury instruction on the willfulness element of tax evasion generally encompasses a good faith defense"). Furthermore, the district court did deliver Kukushkin's requested instruction on his defense theory: that "he did not knowingly or willfully enter into any agreement . . . since he had no knowledge of the unlawful nature of any such agreement." Trial Tr. at 1516.  Thus, the district court's "instructions conveyed the essence of a 'good faith defense' instruction," and there is no basis for reversal. *United States v. McElroy*, 910 F.2d 1016, 1026 (2d Cir. 1990) (rejecting analogous challenge).

**CONCLUSION**

For the reasons set forth above and in the accompanying summary order, the district court's judgment is AFFIRMED.

18