# IN THE COURT OF APPEALS OF IOWA

No. 15-0175
Filed June 15, 2016

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**CHRISTOPHER RYAN LEE ROBY,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Black Hawk County, Stephen C. Clarke, Judge.

Christopher Roby appeals the district court's re-imposition of the mandatory minimum sentence. **AFFIRMED.**

John C. Audlehelm of Audlehelm Law Office, Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Kyle P. Hanson, Assistant Attorney General, for appellee.

Considered by Danilson, C.J., and Vaitheswaran and Tabor, JJ.

**VAITHESWARAN, Judge.**

A jury found Christopher Roby guilty of second and third-degree sexual abuse in connection with sexual acts he performed as a juvenile. The district court sentenced him to a prison term not exceeding twenty-five years on the second-degree-sexual-abuse charge, with a statutorily-prescribed mandatory minimum sentence of seventeen-and-a-half years. The sentence was to run concurrently with a prison term not exceeding ten years on the third-degree-sexual-abuse charge.

The Iowa Supreme Court subsequently concluded "all mandatory minimum sentences of imprisonment for youthful offenders are unconstitutional under the cruel and unusual punishment clause in article I, section 17 of our constitution." *State v. Lyle*, 854 N.W.2d 378, 400 (Iowa 2014). The court applied its decision "to all juveniles currently serving a mandatory minimum sentence of imprisonment" and "require[d] all juvenile offenders . . . in prison under a mandatory minimum sentence to be returned to court for resentencing." *Id.* at 403. The court specified the procedure as follows:

> [T]he district court shall conduct a hearing in the presence of the defendant and decide, after considering all the relevant factors and facts of the case, whether or not the seventy percent mandatory minimum period of incarceration without parole is warranted as a term of sentencing in the case. If the mandatory minimum sentence is not warranted, the district court shall resentence the defendant by imposing a condition that the defendant be eligible for parole. If the mandatory minimum period of incarceration is warranted, the district court shall impose the sentence provided for under the statute, as previously imposed.

*Id.* at 404 n.10. Additionally, the court stated:

> The factors to be used by the district court to make this determination on resentencing include: (1) the age of the offender

and the features of youthful behavior, such as "immaturity, impetuosity, and failure to appreciate risks and consequences"; (2) the particular "family and home environment" that surround the youth; (3) the circumstances of the particular crime and all circumstances relating to youth that may have played a role in the commission of the crime; (4) the challenges for youthful offenders in navigating through the criminal process; and (5) the possibility of rehabilitation and the capacity for change.

*Id.*

Roby moved for resentencing under *Lyle.* Following a hearing, the district court considered the *Lyle* factors and re-imposed the minimum period of incarceration originally imposed. Roby appealed.

Roby contends the Iowa Constitution (1) "preclude[s] the imposition of mandatory minimums of any length on juvenile offenders" and (2) the district court "fail[ed] to properly consider and weigh the [*Lyle*] factors as mitigating factors."

## I. Minimum Sentence

*Lyle* did not foreclose the imposition of all minimum sentences on juveniles. The holding was limited to the imposition of statutory mandatory minimum sentences without consideration of individualized sentencing factors. The court specifically stated:

> Because our holding focuses exclusively on a statutory schema that requires a district court to impose a sentence containing a minimum period of time a juvenile must serve before becoming eligible for parole and that denies a district court the discretion to impose a lesser sentence, we do not consider the situation in which a district court imposes a sentence that denies the juvenile the opportunity for parole in the absence of a statute requiring such a result.

*Id.* at 401 n.7. The court also stated:

> It is important to be mindful that the holding in this case does not prohibit judges from sentencing juveniles to prison for the length of

time identified by the legislature for the crime committed, nor does it prohibit the legislature from imposing a minimum time that youthful offenders must serve in prison before being eligible for parole. Article I, section 17 only prohibits the one-size-fits-all mandatory sentencing for juveniles.

*Id.* at 403. In light of this language, this court has rejected challenges to all minimum sentences. *See State v. Davis*, No. 14-2156, 2016 WL 146528, at *4 (Iowa Ct. App. Jan. 13, 2016) ("The Iowa Supreme Court did not hold in *Lyle* that district courts are prohibited in all cases from imposing minimum sentences for juvenile offenders."); *State v. Propps*, No. 15-0235, 2015 WL 9451072, at *2 (Iowa Ct. App. Dec. 23, 2015) ("[A]t the end of the day, the [*Lyle*] court limited its holding to prison sentences with mandatory minimum terms."); *State v. Marshall-Limoges*, 14-1610, 2015 WL 4936265, at *1 (Iowa Ct. App. Aug. 19, 2015) (noting that "*Lyle* [wa]s inapplicable" where "none of the sentences . . . involve[d] mandatory minimum terms of incarceration"); *State v. Brown*, No. 14-0055, 2015 WL 2393440, at *2 (Iowa Ct. App. May 20, 2015) ("We note *Lyle* does not prohibit the court from imposing a minimum sentence; rather, the court must use its discretion to consider youth and its attendant circumstances as a mitigating factor."). We see no reason to chart a different course here.

## II. *Lyle Factors*

In choosing to impose the original sentence on resentencing, the district court reasoned as follows:

> The victim in this case testified to multiple acts of abuse perpetrated by the defendant when the defendant was sixteen and seventeen years of age. The victim in this case was approximately four-and-a-half years younger than the defendant. The acts that resulted in the jury's guilty verdicts were not merely based on the defendant's immaturity, impetuosity, and failure to appreciate the risks and consequences. In this case this defendant had been

confronted at an earlier time about improper touching of this victim. Notwithstanding that, the defendant continued to sexually abuse his victim.

While the defendant's family and home environment were obviously not the best, the victim's family attempted to step in and provide a home for him. It was during this time that the defendant took advantage of the child victim.

The defendant's participation in the conduct that resulted in his conviction was not the result of any familial or peer pressure. It was conduct freely chosen by the defendant with no care at all for the victim and less care for the victim's family that was giving him a home.

While the court may have been hopeful that a period of incarceration would have led the defendant to some remorse for his behavior, it is apparent that this is not the case. The documents submitted as Defendant's Exhibit 1 show that in an evaluation conducted in May of 2005 at the Iowa Medication and Classification Center the defendant again denied any sexual contact ever occurring with the victim. In a note entitled "Psychological Encounter" showing an encounter date of October 12, 2012, while explaining his sleep problems, it was reported, "He noted that he does not understand how his case has not been overturned because he was not in Iowa at the time of the crime."

The victim stance taken by the defendant does not bode well for rehabilitation. After ten years the defendant has yet to confront his own behavior or even begin to be able to empathize with the victim of his acts.

The court, having considered the factors set out in *State v. Lyle*, including the possibility of rehabilitation and the capacity for change, concludes that the mandatory minimum sentence imposed in this case is appropriate. This defendant has shown no capacity to change the victim stance he has taken since his trial, and a removal of the mandatory minimum sentence imposed in this case would do nothing to further his rehabilitation or to protect the community.

Roby argues the district court "failed to properly consider and weigh the [*Lyle*] factors as mitigating factors." Roby is correct that the *Lyle* factors "are all *mitigating factors*." *Lyle*, 854 N.W.2d at 402 n.8. At the same time, the option of imposing the harshest sentence is still available if, in considering the *Lyle* factors, the district court finds, the juvenile is "irreparably corrupt [and] beyond rehabilitation" "notwithstanding the juvenile's diminished responsibility and

greater capacity for reform that ordinarily distinguishes juveniles from adults." *See State v. Seats*, 865 N.W.2d 545, 558 (Iowa 2015) (noting that, on resentencing, the district court had the option of finding "this is the rare and uncommon case requiring it to sentence [defendant] to life in prison without the possibility of parole"). We read *Seats* as a caution to give juveniles the benefit of virtually every doubt in resentencing juveniles pursuant to *Lyle* before imposing the original, harsh sentence.

Yet if district courts only apply the *Lyle* factors in an ameliorative fashion, they could never re-impose the original sentence, an option *Lyle* clearly affords them. *See State v. Murcia*, No. 15-0588, 2016 WL 541076, at *1 n.1 (Iowa Ct. App. Feb. 10, 2016) ("In effect, this obligation constricts a district court's discretion to re-impose the original sentence with the mandatory minimum prison term."). As demonstrated here, this may present district courts with a "logical impossibility" when considering "the possibility of rehabilitation and the capacity for change." *See State v. Davis*, No. 14-2156, 2016 WL 146528, at *6 (Iowa Ct. App. Jan. 13, 2016) ("To the extent that *Lyle* and other controlling case law requires a judge to consider the abstract possibility of rehabilitation as a mitigating factor without allowing for consideration of actual historical events, the juvenile resentencing process established in *Lyle* would seem to require optimism that may no longer be realistic or appropriate years after the initial sentence was imposed.").

This court has addressed these difficulties by focusing on whether the court used the *Lyle* factors to impose a "harsher" sentence on resentencing. *See State v. Chany,* No. 15-0340, 2016 WL 1705160, at *2 (Iowa Ct. App. Apr. 27,

2016) (citing *Lyle*, 854 N.W.2d at 420 n.8.). And, the court has focused on the abuse-of-discretion standard and whether the court reasonably exercised its discretion. *See State v. Bullock*, No. 15-0077, 2016 WL 1130311, at *3 (Iowa Ct. App. Mar. 23, 2016); *State v. Giles*, No. 15-0021, 2015 WL 9450810, at *2 (Iowa Ct. App. Dec. 23, 2015). But the court also has reversed resentencing decisions where the district court considered the factors as aggravating circumstances. *See, e.g., Davis*, 2016 WL 146528, at *5; *State v. Hajtic*, No. 15-0404, 2015 WL 6508691, at *2-3 (Iowa Ct. App. Oct. 28, 2015).

Because each case is fact-specific, we do not pretend to reconcile these disparate opinions. However, we believe where district courts consider all the *Lyle* factors and conclude one or more of them are either inapplicable or essentially neutral rather than aggravating, they may not run afoul of the *Lyle* precepts. In addition, we believe the fifth factor—the possibility for rehabilitation and the capacity for change—cannot be considered in a vacuum. By necessity, this factor requires an examination of the circumstances surrounding the commission of the crime and the defendant's conduct following conviction, which may reveal minimal prospects for rehabilitation.

The district court did its best to navigate our appellate opinions. After carefully considering each of the *Lyle* factors,[1] the court re-imposed Roby's

---

[1] A district court's failure to consider all the *Lyle* factors requires reversal. *See Hajtic*, 2015 WL 6508691, at *2 (reversing and remanding for district court's "fail[ure] to consider the fourth factor . . . during the sentencing hearing). The district court's order did not reference the fourth *Lyle* factor—"the challenges for youthful offenders in navigating through the criminal process." *Lyle*, 854 N.W.2d at 404 n.10. However, the resentencing record reveals that this factor was inapplicable because Roby was not criminally charged for the crimes he committed as a juvenile until he reached the age of eighteen. Accordingly, the district court did not err in omitting the factor from its sentencing order.

original sentence. The court determined that several of the *Lyle* factors were inapplicable in Roby's case. *See Chany*, 2016 WL 1705160, at *2 ("[T]he district court went through the *Lyle* factors . . . and determined none of the factors would lessen or mitigate [defendant's] sentence.").

The court also concluded Roby showed minimal capacity for rehabilitation. In part, the court based its decision on Roby's failure to exhibit remorse while in prison. In our view, a defendant's progress or lack of progress in prison is a prime indicator of the prospects for rehabilitation and was an appropriate consideration in deciding whether to re-impose the original sentence. *See State v. Tuecke*, No. 15-0617, 2016 WL 1681524, at *12 (Iowa Ct. App. Apr. 27, 2016) (approving district court's consideration of [defendant's] failure to follow the terms of his probation twice). Significantly, Roby was disciplined for sexual misconduct in prison based on "[i]nappropriate touching [of] female staff." This conduct occurred well after his conviction and sentence. There hardly can be a clearer indication that Roby was not rehabilitated. Accordingly, this factor did not weigh in favor of reducing his original sentence.

We conclude the district court did not abuse its discretion in applying the *Lyle* factors.[2] Accordingly, we affirm the re-sentencing decision.

**AFFIRMED.**

Tabor, J., concurs; Danilson, C.J., concurs specially.

---

[2] We would suggest the district court recite each *Lyle* factor at least in summary fashion, state whether each factor was considered, and then address each factor to determine if it mitigates the defendant's conduct and, if so, how, or if it does not mitigate the conduct, why not. Such a record would allow appellate review of the record to ascertain if the court used proper discretion or abused its discretion as it relates to the *Lyle* factors. A generalized discussion of the mitigating factors is insufficient. *See Davis*, No. 14-2156, 2016 WL 146528 at *7.

**DANILSON, Chief Judge** (specially concurring)

I specially concur to address the recent case of *State v. Sweet*, ___ N.W.2d ___, ___ , 2016 WL 3023726, at \*29 (Iowa 2016), and the question of whether the *Miller* factors[3] remain applicable to this case. In *Sweet*, the supreme court adopted a categorical rule that juvenile offenders may not be sentenced to life without the possibility of parole under article 1, section 17 of the Iowa Constitution. In reaching this conclusion, the supreme court decimated the use of the *Miller* factors, describing one factor as "not . . . very helpful," *Sweet*, 2016 WL 3023726 at \*27, and another factor "fraught with risks." *Id.* at \*28. Ultimately, the court stated the *Miller* factors cannot be applied in any principled way—at least as it pertains to whether parole eligibility should be granted for a juvenile defendant facing a life sentence.

Unfortunately, the principles in *Lyle*, requiring the application of the *Miller* factors to determine if a mandatory minimum sentence should be imposed upon a juvenile offender serving or required to serve a term of years, were not overruled in *Sweet*. Therein lies our dilemma. Do we follow the principles of *Lyle*, or conclude the principles of *Lyle* have been completely eroded by the decision in *Sweet*?

The resolution of this question has been best answered in *Agostini v. Felton*, 521 U.S. 203 (1997). In *Agostini*, the United States Supreme Court stated,

> We do not acknowledge, and we do not hold, that other courts should conclude our more recent cases have, by implication,

---

[3] *Miller v. Alabama*, 132 S. Ct. 2455, 2475 (2012).

overruled an earlier precedent. We reaffirm that "[i]f a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions."

521 U.S. at 237 (alteration in original) (citing *Rodriguez de Quijas v. Shearson*, 490 U.S. 477, 484 (1989)).

Our supreme court has said much the same in stating,

Yet it is the prerogative of this court to determine the law, and we think that generally the trial courts are under a duty to follow it as expressed by the courts of last resort, as they understand it, even though they may disagree. If our previous holdings are to be overruled, we should ordinarily prefer to do it ourselves.

*State v. Eichler*, 83 N.W.2d 576, 578 (Iowa 1957).

Because *Lyle,* as well as *State v. Pearson*, 863 N.W.2d 88, 95-97 (Iowa 2013)—a similar case involving a juvenile offender facing a mandatory-minimum sentence—have not been overruled and directly control the issue before us, we remain bound by the principles of *Lyle.* Accordingly, the majority was correct to apply the *Miller* factors in this case, and I agree with resolution reached by the majority.